**The PEOPLE of the State of Colorado,**
**Plaintiff-Appellee,**

v.

**Roger Wayne VIDUYA,**
**Defendant-Appellant.**

**No. 83SA48.**

Supreme Court of Colorado,
En Banc.

June 24, 1985.

Rehearing Denied Aug. 19, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Solicitor Gen., John Milton Hutchins, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Margaret L. O'Leary, Lyndy Ohneck, Jody Sorenson Theis, Judy Fried, Deputy State Public Defenders, Denver, for defendant-appellant.

LOHR, Justice.

Roger Wayne Viduya appeals his conviction for vehicular homicide. *See* § 18-3-106, 8 C.R.S. (1978).[1] Because the trial judge applied the wrong legal standard

---

**1.** Section 18-3-106 was amended after the accident, but prior to trial, and amended again subsequent to trial. *See* § 18-3-106(1)(b) and

when concluding that statements made by Viduya to the police were constitutionally obtained and admissible at trial, we reverse and remand with directions to hold a new hearing on that issue. We affirm all the other challenged rulings of the trial court.

### I.

At approximately 10:00 p.m. on February 6, 1981, a car driven by Viduya struck and killed pedestrian Rocco Borquez as Viduya was driving east on 112th Street in Adams County. Viduya was charged by information with causing the death of Borquez by driving in a reckless manner and by driving while under the influence of intoxicating liquor, the two means by which vehicular homicide can be committed pursuant to section 18–3–106(1), 8 C.R.S. (1978).

On September 8, 1981, after trial to a jury in Adams County District Court, Viduya was found guilty of vehicular homicide. The jury was provided with a verdict form that not only required the jurors to find Viduya either guilty or not guilty of the offense, but also required them, if they found Viduya guilty, to specify whether he committed the offense by operating a motor vehicle in a reckless manner, or by operating a motor vehicle while under the influence of intoxicating liquor, or both. The jury found that Viduya committed the offense of vehicular homicide while operating a motor vehicle in a reckless manner. Viduya was sentenced to two years with the department of corrections. He appeals, raising seven assignments of error.[2]

### II.

### A.

Viduya contends that the district court erred in denying his motion to suppress

statements made by him to police officers after the accident. We conclude that further proceedings in the trial court are necessary to resolve this issue.

At the hearing on Viduya's motion to suppress, Officer Holden, the first police officer on the scene and the officer who arrested the defendant, testified as follows: Holden arrived at the scene of the accident while on routine patrol. As he approached that location, he saw a large cloud of steam rising from a car lying in the ditch off the road. As he got closer, he could see a person lying in the middle of the road and approximately seven or eight other people in the vicinity. He radioed for emergency aid and got out of his car to check the prostrate victim, Rocco Borquez. Borquez had no pulse and was not breathing.

Two men at the scene then asked Holden if he needed to know who had been driving the car that was in the ditch. Holden said that he did, whereupon the two men pointed out a man approximately seventy-five yards away, walking away from the location of the accident. Holden "hurriedly approached" the man walking away—Viduya, although not yet identified by name— and asked him if he had been driving the vehicle that was in the ditch.[3] Viduya said, "no." Holden then requested that Viduya return with him to the scene of the accident. In Holden's words, "I advised him that we were investigating a serious accident and since he was in the area he would have to come back."

Holden returned with Viduya to the accident scene and had him stand near a fence alongside 112th Street while Holden went

(4), 8 C.R.S. (1984 Supp.). The amendments are not material to the issues in this case.

**2.** Viduya's notice of appeal was filed on November 19, 1981, in the court of appeals. The appeal was transferred to this court pursuant to section 13–4–110, 6 C.R.S. (1973), because Viduya raised a challenge to the constitutionality of the vehicular homicide statute, section 18–3–106, 8 C.R.S. (1978 & 1984 Supp.). The court of appeals does not have subject matter jurisdiction over cases in which the constitutionality of

a statute is in question. § 13–4–102(1)(b), 6 C.R.S. (1973). Viduya argued that the term "proximate cause" as used in the vehicular homicide statute is vague, thereby violating due process of law. While the appeal was pending, we explicitly rejected this argument in *People v. Rostad*, 669 P.2d 126 (Colo.1983). That decision is dispositive of the constitutional issue raised here by Viduya.

**3.** The defendant testified that he was walking toward a nearby 7-Eleven store to call for help.

back to talk to the two men. They confirmed that Viduya was the person they had seen getting out of the vehicle involved in the accident. Sometime during this period, although after the first encounter with Viduya, Holden noted that Viduya appeared to be intoxicated. After confirming the identification, Holden returned to Viduya and placed him under arrest for vehicular assault. The officer advised Viduya of his *Miranda* [4] rights at this time. Viduya agreed to answer questions. He said he had been driving the car but that he did not remember being in an accident or striking any objects or pedestrians. Viduya also stated that he had consumed approximately six beers in the last five hours, and gave varying answers when asked at different times how fast he had been traveling. Another officer testified that the defendant made further statements at the police station after again being advised of his *Miranda* rights.

Prior to trial, Viduya moved to suppress all statements made by him relating to the alleged vehicular homicide. At the hearing on that motion, Viduya asserted that his initial response to Holden's question concerning whether he was driving the vehicle involved in the accident was a statement given while in custody but without a proper *Miranda* advisement and that all subsequent statements were the fruits of the initial improper questioning. The district court denied the motion. Viduya assigns this ruling as error.

### B.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless the prosecution demonstrates that the defendant was adequately advised of his privilege against self-incrimi-

nation and his right to counsel, and thereafter voluntarily, knowingly and intelligently waived those rights. The reason for the automatic warning requirement is that without such a safeguard, the compelling pressures inherent in police custody "work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely," in violation of the Fifth Amendment to the United States Constitution.[5] *Id.* at 467, 86 S.Ct. at 1624.

By "custodial interrogation," the Court meant "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444, 86 S.Ct. at 1612. We have held that this question of custody turns on an objective assessment of whether a reasonable person in the suspect's position would believe himself to be deprived of his freedom of action in any significant way. *People v. Black*, 698 P.2d 766, 768 (Colo.1985); *People v. Johnson*, 671 P.2d 958, 961 (Colo.1983); *People v. Algien*, 180 Colo. 1, 7, 501 P.2d 468, 471 (1972). Several factors must be considered in determining whether a person is in custody, including:

> [T]he time, place and purpose of the encounter; the persons present during the interrogation; the words spoken by the officer to the defendant; the officer's tone of voice and general demeanor; the length and mood of the interrogation; whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation; the officer's response to any questions asked by the defendant; whether directions were given to the defendant during the interrogation; and the defendant's verbal or nonverbal response to such directions.

*People v. Black*, 698 P.2d at 768; *People v. Thiret*, 685 P.2d 193, 203 (Colo.1984).

---

**4.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**5.** The Fifth Amendment to the United States Constitution provides, in relevant part, that "No person ... shall be compelled, in any criminal case, to be a witness against himself...."

■ In denying the defendant's motion to suppress his original statement, the district court ruled:

> With respect to the statements made by the Defendant at the time the initial inquiry was made of the Defendant, to-wit, "Were you driving?" and the Defendant answered in the negative. The officer at that time was investigating an accident, which he had no way of knowing how it occurred. A body is lying in the middle of the street. Other people have identified the Defendant as the driver of that vehicle. For all the officer knew at that point, the victim could have been ejected from the vehicle in a collision with another object. So, that particular question I do not find to be inappropriate in view of the fact that there was no suspicion at that time of any offense by the Defendant, and the officer asked the question in the course of a valid investigation.[6]

The court thus premised its denial of Viduya's motion to suppress his original response on the facts that Officer Holden had not yet determined that an offense had been committed and that Holden's investigation had not focused on the defendant as a criminal suspect at the time the officer made his initial inquiry. The district court applied the wrong legal standard by failing to determine whether Viduya was in custody for the purposes of *Miranda* at the time of the initial questioning. *People v. Black*, 698 P.2d at 768. *Compare Miranda v. Arizona with Escobedo v. Illinois*, 378 U.S. 478, 490–91, 84 S.Ct. 1758, 1764–65, 12 L.Ed.2d 977 (1964). *See also People v. Parada*, 188 Colo. 230, 233, 533 P.2d 1121, 1122 (1975) ("*Miranda* substituted the 'custodial interrogation' requirement for the 'focus of the investigation' test which had earlier been enunciated in *Escobedo*....").

■ The district court's failure to apply the proper legal standard requires us to reverse the judgment and remand for a new hearing on this issue.[7] *People v. Black; People v. Johnson.* On remand, the district court has discretion to receive additional evidence and shall make findings of fact on the issue of custody, using the legal standards set forth in this opinion and considering the applicability of the United States Supreme Court's holding in *Berkemer v. McCarty*, —— U.S. ——, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), to the facts as found by the court.[8] If the court finds that

---

**6.** The court followed its oral ruling with the following written ruling:

> The Court concludes that this statement [Viduya's initial response that he was not driving the vehicle] should not be suppressed. The officer had no reason to suspect that a crime had been committed at that time. His inquiry was proper investigation at the scene of an accident. There was no requirement for an advisement of *Miranda* rights at that time and Defendant's constitutional rights were not violated.

The district court declined to suppress any subsequent statements made by Viduya, finding that all these statements were made voluntarily after a full advisement of Viduya's *Miranda* rights.

**7.** Viduya also claims that Officer Holden had probable cause to arrest him at the time of the initial questioning, and for this reason the initial questioning was "custodial interrogation." Contrary to Viduya's argument, Officer Holden did not have probable cause to arrest him when Holden first asked Viduya whether he was driving the car. *See People v. Roybal*, 655 P.2d 410, 412–13 (Colo.1982). In *Roybal*, this court held that probable cause to arrest Roybal did not exist when the record indicated that Roybal had been driving a vehicle involved in an accident and had an odor of alcohol about him but when there was no evidence that the accident occurred as a result of misconduct by the defendant. In the present case, too, evidence of misconduct was lacking. However, the fact that probable cause to arrest Viduya did not exist at the time of the initial questioning is not dispositive of the issue of whether Viduya was subject to custodial interrogation for the purposes of *Miranda* at that time.

**8.** In *Berkemer v. McCarty*, —— U.S. ——, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the United States Supreme Court held that a person temporarily detained pursuant to an ordinary traffic stop is not "in custody" for the purposes of *Miranda*. The Court concluded that a *Miranda* advisement need be given only when the motorist's freedom of action has been curtailed to a "degree associated with a formal arrest." 104 S.Ct. at 3151, quoting *California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam). We do not decide here whether the rule announced by the Court in *Berkemer* applies to accident investigations. The application of the *Berkemer* standard to accident investigations was neither presented to

Viduya's answer to Officer Holden's original inquiry was admissible despite the absence of *Miranda* warnings, the court should reinstate the judgment of conviction. However, if the court finds the answer inadmissible, it should then consider the admissibility of Viduya's subsequent statements, made after full *Miranda* warnings, considering the applicability of the United States Supreme Court's holding in *Oregon v. Elstad,* — U.S. —, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), to the facts as found by the court. If the court determines that the subsequent statements were inadmissible, a new trial will be required. If the court determines that the subsequent statements were admissible, but the answer to the original question was not, the court should consider whether the admission of that answer requires a new trial or was harmless error.

Because of the manner in which we have resolved this issue, we find it necessary to address Viduya's other assignments of error.

### III.

### A.

Viduya contends that the district court erred by failing to grant his motion, made after all the evidence had been presented, to dismiss the vehicular homicide charge to the extent that it was based on driving under the influence of intoxicating liquor or, in the alternative, to strike the testimony concerning the results of his blood alcohol tests. The defendant argues that a due process violation occurred because of the failure on the part of the prosecution to preserve a second sample of his blood and because the results of the testing of the single available sample were so inconsistent as to render that sample invalid. As noted above, the jury explicitly declined to find that Viduya was under the influence of intoxicating liquor when he committed the offense of vehicular homicide. However, Viduya's argument that

the blood alcohol evidence was improperly admitted remains relevant, because it is possible that the jury considered the evidence of Viduya's drinking when it found that he committed the offense of vehicular homicide by operating the motor vehicle in a reckless manner. *Cf. Yerby v. People,* 176 Colo. 115, 117, 489 P.2d 1308, 1309 (1971) (testimony concerning defendant's drinking admissible as factor in determining recklessness).

The defendant was arrested at the scene of the accident and transported to a hospital, where two samples of his blood were drawn by a medical technologist. The two tubes containing the samples were sealed in a cardboard box and transported by the police to Kier Laboratories for analysis. Toxicologist Lawrence Kier analyzed the first sample of Viduya's blood on February 7, 1981, the day after the accident, and concluded that he had a blood alcohol level of 0.122 percent. Kier so testified at trial on September 1, 1981. A blood alcohol level of 0.10 percent or more raises the presumption that the defendant was under the influence of alcohol for the purposes of the vehicular homicide statute. § 18–3–106(2)(c), 8 C.R.S. (1978).

The second sample of the defendant's blood supposedly was preserved in a refrigerator at Kier Laboratories. Viduya's attorney arranged to have Dale Wingeleth, another toxicologist, analyze the second sample. Wingeleth performed the test on August 29, 1981, and obtained results showing a blood alcohol level of approximately 0.07 percent. On September 2, Wingeleth and Viduya's attorney discovered that the sample of blood given to Wingeleth by Kier Laboratories was labeled with two different numbers, one number indicating that it was indeed the second sample of Viduya's blood taken on February 6, 1981, and the other number indicating a wholly different source. Nothing in the record reflects that it was ever determined, or was

the trial court nor briefed by the parties in this court, except for a single reference by the People in a memorandum of supplemental authori-

ty. *See People v. Black,* 698 P.2d 766, 768 n. 6 (Colo.1985) (declining to consider *Berkemer* for the same reason).

possible to determine, whether this was the second sample of the defendant's blood.

The defendant moved to dismiss the charge for failure to preserve the second sample. The district court denied the motion and ordered that the remainder of the first sample of Viduya's blood, still preserved at Kier Laboratories, be delivered to Wingeleth for analysis. Wingeleth's tests on this sample yielded a blood alcohol level of 0.208 percent. Wingeleth testified that, in his opinion, the great difference between Kier's result and his result when testing portions of the same sample resulted in a sample and test without scientific validity. After all the evidence had been presented, the defendant moved that the charge be dismissed to the extent that it was based upon driving under the influence of intoxicating liquor or, in the alternative, that all testimony relating to the blood tests be stricken. The motion was denied. Viduya assigns this denial as error.

### B.

 The destruction or suppression by the prosecution of evidence favorable to an accused violates due process when the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). In determining whether a defendant's due process rights have been abridged by the prosecution's suppression of exculpatory evidence, three factors must be considered: (1) whether the evidence was suppressed or destroyed by the prosecution; (2) whether the evidence is exculpatory; and (3) whether the evidence is material to the defendant's case. *People v. Roan*, 685 P.2d 1369, 1370 (Colo.1984); *People v. Sams*, 685 P.2d 157, 162 (Colo.1984); *Garcia v. District Court*, 197 Colo. 38, 45–46, 589 P.2d 924,

929 (1979); *People v. Hedrick*, 192 Colo. 37, 40–41, 557 P.2d 378, 380 (1976).

 We need not address the second and third factors of the test, as the record shows that the relevant evidence was not destroyed or suppressed. The prosecution properly preserved the remainder of the first sample of Viduya's blood tested by Kier, and Viduya was given an opportunity to test this very same sample. While the second sample of blood was taken for the express purpose of preserving that sample for testing by the defendant, constitutional due process rights of the accused were not violated when the defendant was required instead to test the first sample, the sample also tested by the People. Only if the remainder of the first sample had been destroyed or contaminated, and thus had become unavailable to the defendant, would the *Brady* doctrine be implicated in this case.

 Except for the fact that Kier and Wingeleth reached widely different results when testing, nothing in the record establishes or indicates that the first sample was improperly opened, tested, capped or stored by Kier, thus allowing it to be contaminated and unusable by the defendant. Wingeleth testified that opening a sample, withdrawing and analyzing a portion, and then capping the remainder of the sample does not in and of itself cause a contamination. He also testified that he had no idea why his result differed from Kier's. The simple fact that the experts for the adverse parties disagreed greatly as to Viduya's blood alcohol level after testing different portions of the same blood sample does not prove that the blood sample became contaminated and, thus, that the prosecution destroyed potentially exculpatory evidence.[9]

Under all these circumstances, we find that no due process violation occurred.

9. Before the jury, the defendant was allowed to expose and explore in full the problems with the second sample, the delivery of the remainder of the first sample to Wingeleth, the great difference between the results of Kier's test of that sample and the results of Wingeleth's test, Wingeleth's discussion of the various ways in which a blood sample might become contaminated, and Wingeleth's opinion that the great difference in test results meant that the blood alcohol level testing was scientifically invalid.

Therefore, the district court did not err in refusing to dismiss the charge in part or to strike the evidence relating to the tests of Viduya's blood alcohol level as a remedy for such a violation.

## IV.

The defendant contends that the district court erred when it would not allow his counsel to question two prosecution witnesses about certain of their observations at the scene of the accident. Specifically, the trial court would not allow Viduya's counsel to ask eyewitness Thompson whether, based on his observations, it appeared to him that Viduya "was trying to avoid the pedestrian" immediately before the accident occurred. The court found that the question sought an answer that was speculative and not the subject of proper lay opinion testimony. *See* CRE 701. Later, the court would not permit Viduya's counsel to ask police officer Martin, who questioned Viduya at the police station in the early morning hours after the accident, whether, based on his experiences with accident victims, people who have been in accidents "sometimes are a little shaky." The defense obviously was attempting to establish that Viduya's physical and mental condition after the accident could have been due to the effects of the accident, and not to the effects of alcohol. The district court refused to allow Martin to answer this question, concluding that it was irrelevant whether the officer knew about other accidents and other accident victims.

 While the rulings made by the district court were unduly restrictive, we cannot say that reversible error occurred. Reversible error may not be predicated upon a ruling that excludes evidence unless a substantial right of a party is affected. CRE 103(a).

 Eyewitness Thompson was not allowed to give his opinion as to whether it appeared that Viduya attempted to avoid hitting Borquez. An affirmative response would have aided in rebutting the charge that Viduya was reckless. However, Thompson did testify that when struck, Borquez may have been standing on the edge of the blacktop, not off the road on the shoulder as testified by other witnesses; that Viduya turned his car back toward the road, away from Borquez, before striking him; and that in his opinion, Viduya was not traveling at an excessive rate of speed. Supplementation of this testimony by admitting Thompson's opinion concerning Viduya's apparent motive when turning away from the pedestrian at the last instant before impact would not have aided Viduya's case materially.

 While Officer Martin was not allowed to testify concerning the physical and mental condition of people who have recently been in an auto accident, Officer Holden, first on the scene of the accident and the officer who arrested Viduya, *was* allowed to testify that drivers of cars in injury accidents "sometimes" experience orientation problems after such an accident. A similar statement by Martin would have been merely cumulative.

Because no substantial right of Viduya's was affected by the district court's rulings limiting his questioning of the two witnesses, reversible error did not occur.

## V.

Viduya next argues that the district court erred by failing to exclude certain expert testimony by Officer Wilson. Wilson, who was qualified as an expert in accident reconstruction, was permitted to testify concerning headlight illumination tests in which he participated involving vehicles of a type other than the Gremlin driven by the defendant. Based on these tests, Wilson testified that the headlights of the Gremlin should have illuminated the roadway for a sufficient distance so that the defendant should have been able to see Borquez walking along the road and stop before hitting him, even traveling at 55 mph, Viduya's speed as calculated by Wilson. Defense counsel objected that this testimony was prejudicial but not probative because it was not based on the illumina-

tive capability of the headlights of the Gremlin involved in the accident. Wilson testified, however, that headlight illumination distances did not vary much among types of automobiles with the same headlight system or among automobiles of the same type. On this basis, the court refused to exclude the testimony.

■■■ On this record, we find no error. Officer Wilson's headlight illumination opinion testimony was based on his experience and training, and his testimony concerning the lack of variation among types of vehicles established that the testimony was relevant to the vehicle driven by Viduya. The fact that the headlights of the particular vehicle involved in the accident had not been tested was explored fully by the defendant on cross-examination. The weight to be given the officer's opinion was properly left to the jury for resolution. *See Wise v. Hillman*, 625 P.2d 364, 367–68 (Colo.1981).

### VI.

Viduya argues that the district court erred in admitting into evidence a photograph of the dead victim, and in not granting a mistrial because of the emotional reaction by the victim's wife when shown the photograph. The People sought admission of the photograph primarily so that the doctor who performed the autopsy on Borquez could identify him. The photograph was also shown to the deceased's wife for the purpose of identification. Prior to the introduction of the photograph, defense counsel offered to stipulate to identity and to cause of death. Because of the offered stipulation, the defendant argued that whatever probative value the photograph may have had was lost and was substantially outweighed by its prejudicial impact. *See* CRE 403. The district court found the picture neither inflammatory nor "gory" and refused to exclude it, although stating that as long as the defense was willing to stipulate to identity, the photograph "may not be necessary."

While Viduya's counsel made an additional objection when the victim's wife reacted emotionally to the display of the photograph, he did not move for a mistrial on these grounds until the next day, after the People presented another witness and rested their case, and after the defense presented four witnesses and rested its case. The court denied the motion, again finding that the photograph was not inflammatory. The court stated that it did not know how the prosecution "could have avoided" the emotional reaction by the witness.

■■■ It is within the discretion of the district court to decide whether otherwise relevant photographs are unnecessarily inflammatory or unfairly prejudicial to the defendant, and the court's decision will be reversed only upon a showing of an abuse of that discretion. *People v. Mattas*, 645 P.2d 254, 260 (Colo.1982); *People v. White*, 199 Colo. 82, 84, 606 P.2d 847, 849 (1980). Nothing about the photo, or about the emotional reaction produced in the victim's wife, indicates that the district court abused its discretion in determining that the photograph at issue was not unduly inflammatory and that it need not be excluded. In *People v. White*, the prosecution was allowed to introduce photographs of a murder victim taken at the time an autopsy was performed and depicting the head and face of the deceased. 199 Colo. at 83, 606 P.2d at 848–49. Reviewing a challenge similar to the one made here, we held that such photographs have probative value when they are offered to show the identify of the victim, among other things. We also held that such photographs are not inadmissible solely because the defendant has stipulated to identity or because identity has been established through other prosecution witnesses. 199 Colo. at 84, 606 P.2d at 849. That holding is dispositive of the issue here.

Under all these circumstances, including the fact that the defendant's motion for a mistrial was not timely made, we find no error in the district court's admission of the photograph and denial of the motion for mistrial.

## VII.

Finally, Viduya claims that the district court erred by not requiring the People to prove that he was both reckless *and* intoxicated when his car struck Borquez, because of the manner in which Viduya was charged. The defendant was charged by information as follows:

ROGER WAYNE VIDUYA, did unlawfully and feloniously operate and drive a motor vehicle in a reckless manner and while driving under the influence of intoxicating liquor, which conduct was the proximate cause of death of Rocco Borquez. . . .

As defined in section 18–3–106, 8 C.R.S. (1978), vehicular homicide is a single offense.[10] The statute describes two ways in which this offense can be committed—causing the death of another while operating a motor vehicle in a reckless manner, subsection 1(a), or while under the influence of any drug or intoxicant, subsection 1(b). It is proper in one count of an information to charge all ways in which an offense might be committed, stating the several alternatives conjunctively with the use of "and." *People v. Edwards*, 184 Colo. 440, 442–43, 520 P.2d 1041, 1042 (1974); *Self v. People*, 167 Colo. 292, 300, 448 P.2d 619, 623 (1968); *Hernandez v. People*, 156 Colo. 23, 28–31, 396 P.2d 952, 955–56 (1964); *Cortez v. People*, 155 Colo. 317, 319–20, 394 P.2d 346, 348 (1964). It is then proper to instruct the jury in the disjunctive, requiring conviction if any of the statutory alternatives is established by the evidence. *People v. Edwards*, 184 Colo. at 443, 520 P.2d at 1042; *Hernandez v. People*, 156 Colo. at 29–30, 396 P.2d at 956. *Cf. People v. Marquez*, 692 P.2d 1089, 1099–1100 (Colo.1984) (general verdict will support conviction even though jury was instructed that crime could be committed in

alternative ways); *People v. Ledman*, 622 P.2d 534, 541 (Colo.1981) (same).

Viduya argues that the vehicular homicide statute actually defines two separate offenses having different elements and requiring different culpable mental states. We disagree. Simply because the alternative ways for committing a single offense require proof of different acts and even different culpable mental states does not mean that a single offense has not been defined by the statute, or that the offense may not be alleged in a single count of an information and presented to the jury in the alternative. *See People v. Marquez*, 692 P.2d at 1099–1100, and at 1104–05 (Lohr, J., concurring); *People v. Ledman*, 622 P.2d at 541. What we said in *People v. Holmes*, 129 Colo. 180, 183, 268 P.2d 406, 407 (1954), is also true here:

Two distinct and separate offenses are not joined in the count of the information before us, it does not set out offenses created by different statutes for which different punishments are provided. All that is set out is one transaction for which there is one punishment, and, in effect, is only one offense. In the count, different possible acts that relate to one transaction are set out; are a connected charge thereof; and joinder thereof in one count is permissible.

The fact that the alternative ways for committing vehicular homicide are not joined in the statute by the disjunctive "or" is of no importance. *Cortez v. People*, 155 Colo. at 320, 394 P.2d at 348. The statute is divided into two subsections "which are disjunctive in the very nature of the construction of the section." *Id.* Only one offense, with one punishment, is described, although the offense can be committed in either one of the two ways detailed.

---

**10.** At the time of the accident, the vehicular homicide statute provided, in relevant part:

(1)(a) If a person operates or drives a motor vehicle in a reckless manner, and such conduct is the proximate cause of the death of another, he commits vehicular homicide.

(b) If a person operates or drives a motor vehicle, while under the influence of any drug or intoxicant, and such conduct is the proximate cause of the death of another, he commits vehicular homicide. This is a strict liability crime.

§ 18–3–106, 8 C.R.S. (1978). Subsection (1)(b) has been amended immaterially, *see* note 1, and is now subsection (1)(b)(I). *See* § 18–3–106(1)(b)(I), 8 C.R.S. (1984 Supp.).

Here, Viduya was properly charged in the information, and the jury was properly instructed on the alternative ways of committing vehicular homicide. The jury had the alternative of finding that Viduya committed the offense while driving in a reckless manner, or while driving under the influence of intoxicants, or both (although this last finding would establish only one offense and result in one punishment). The jury found that Viduya committed the offense by causing the death of Borquez while operating a motor vehicle in a reckless manner. Evidence in the record supports this verdict.

## VIII.

We reverse the conviction of Roger Wayne Viduya for vehicular homicide and remand for a new hearing on Viduya's motion to suppress as outlined in Part II of this opinion.