The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Stefan Charles THOMPSON,
Defendant-Appellant.

No. 83CA1208.

Colorado Court of Appeals,
Div. II.

Nov. 7, 1985.

Rehearing Denied Dec. 12, 1985.

Certiorari Granted (People)
March 31, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, and Judy Fried, Deputy State Public Defender, Denver, for defendant-appellant.

TURSI, Judge.

Stefan Charles Thompson was convicted of class 2 felony child abuse in the death of Sequetha Minick. He appeals the conviction on the ground that the definition of "knowingly" presented to the jury was erroneous as a matter of law. We reverse and remand for new trial.

On November 8, 1982, Sequetha Minick, age four months, died from a loss of blood due to internal bleeding precipitated by a sudden, sharp, and violent blow to her abdomen. Her injury occurred while she was in Thompson's care. Thompson testified that he lost his balance when he reached to the back of a closet to retrieve some marijuana and accidentally stepped on Sequetha, who was lying on the floor.

Thompson did not disclose the cause of the injury to anyone. He contends that his silence was motivated by a desire to inform Sequetha's mother of the incident first. Sequetha's mother took her to the hospital within two hours, but the doctors did not

attempt surgery for another three hours. The jury found defendant guilty of class 2 felony child abuse but acquitted him of first degree murder and the lesser included offenses of second degree murder, manslaughter, and criminally negligent homicide.

## I.

For a child abuse to constitute a class 2 felony, there exists the requirement that the actor knowingly expose a child to a danger which causes the child's death. *See* § 18–6–401(7)(a)(I), C.R.S. (1984 Cum. Supp.). Thompson contends that the jury instruction on "knowingly" should have been: "A person acts knowingly ... with respect to a result of his conduct when he is aware that his conduct is practically certain to cause the result." *See* § 18–1–501(6), C.R.S. We agree.

The trial court gave the following definition to the jury: "A person acts 'knowingly' when the defendant is generally aware of the abusive nature of his conduct with respect to the child." This instruction was derived from language in *People v. Noble*, 635 P.2d 203 (Colo.1981), which was based on the Colorado child abuse statute prior to its amendment in 1980. At that time, the requisite mental states for child abuse were, in the alternative, "knowingly, intentionally, or negligently," and the seriousness of the offense was not premised upon the defendant's mental state. *See* § 18–6–401(1), C.R.S. (1973). *Noble* held that knowledge of the result of a defendant's conduct was not a necessary element of felony child abuse. The court reasoned:

"[i]f the legislature [had] intended criminal responsibility to hinge on the actor's awareness that his conduct is practically certain to cause the proscribed result, it hardly would have established as an alternative to the elements of 'knowingly' the culpable mental state of 'negligently.' A person acts 'negligently' when he fails to perceive a substantial and unjustifiable risk that a result will occur or that a circumstance exists."

The legislative history of the 1980 amendment discloses that the State Public Defender, in an apparent reaction to the *Noble* trial, requested that the General Assembly reconsider § 18–6–401(7)(a).

At the time applicable to this case, the section read as follows:

"(I) When a person acts knowingly, except as to paragraph (b) of subsection (1) of this section, and the child abuse results in death to the child, it is a class 2 felony.

(II) When a person acts recklessly or with criminal negligence and the child abuse results in death to the child, it is a class 3 felony.

(III) When a person acts knowingly, except as to paragraph (b) of subsection (1) of this section, and the child abuse results in serious bodily injury to the child, it is a class 3 felony.

(IV) When a person acts recklessly or with criminal negligence and the child abuse results in serious bodily injury to the child, it is a class 4 felony.

(V) When a person acts knowingly or recklessly, except as to paragraph (b) of subsection (1) of this section, and the child abuse results in any injury other than serious bodily injury to the child, it is a class 1 misdemeanor.

(VI) When a person acts with criminal negligence and the child abuse results in any injury other than serious bodily injury to the child, it is a class 2 misdemeanor." Section 18–6–401(7)(a), C.R.S. (1984 Cum.Supp.).

Hence, the seriousness of the offense has been delineated to provide for a range from a class 2 felony to a class 2 misdemeanor depending on the severity of the injury to the child and the particular mental state of the abuser. Also, the culpable mental states required by the amended child abuse statute are now "knowingly, recklessly, or through criminal negligence." *See* § 18–6–401(1), C.R.S. (1984 Cum.Supp.).

Class 2 felony child abuse can only be committed with the mental state knowingly. Section 18–6–401(7)(a)(I). Accordingly, a definition of knowingly based on *Noble* is improper under the amended

child abuse statute because the mental state of negligence is no longer an alternative to knowingly in the class 2 felony. Instead, when a person acts with recklessness or criminal negligence which results in the death of an abused child, the offense is class 3 felony child abuse. Section 18–6–401(7)(a)(II).

The essential elements of class 2 felony child abuse are that the abuser commit one of the acts of abuse listed in § 18–6–401(1) (except for paragraph (b)) and that the abuse causes the death of the child. The mental state of knowingly applies to each of these elements. *See* § 18–1–503(4), C.R.S. (1978 Repl.Vol. 8) (a specified mental state applies to every element of the offense). Thus, the abuser must be both aware of the nature of his abusive conduct and that his conduct is practically certain to cause the child's death.

Therefore, the jury instruction as given is infirm because it does not require the jury to find that defendant acted knowingly with respect to the child's death. Accordingly, the conviction for class 2 felony child abuse must be reversed.

## II.

◼ The People contend that even if the definition of "knowingly" was in error, a new trial is not required because, by finding Thompson guilty of class 2 child abuse, the jury impliedly found him guilty of the lesser included offense of class 3 child abuse which requires the lesser culpable mental state of criminal negligence. We disagree.

Class 3 felony child abuse committed with criminal negligence requires a finding that the accused, through a gross deviation from the standard of care that a reasonable person would exercise, failed to perceive a substantial and unjustifiable risk that the child's death will occur. *See* § 18–1–501(3), C.R.S. (1978 Repl.Vol. 8) (definition of criminal negligence); § 18–6–401(7)(a)(II), C.R.S. (1984 Cum.Supp.). This definition of criminal negligence also applies to criminally negligent homicide. *See People v. Taggart*, 621 P.2d 1375 (Colo.1981). Although

the trial court gave the jury the correct definition of criminal negligence for both offenses, we cannot assume that the jury believed that defendant had this mental state for child abuse when it specifically found defendant not guilty of criminally negligent homicide.

Accordingly, defendant's conviction is reversed and the cause is remanded for new trial.

KELLY, J., concurs.

METZGER, J., dissents.

METZGER, Judge, dissenting.

I respectfully dissent.

Given the circumstances of this case, the trial court's instruction, which adopted the holding of our supreme court in *People v. Noble*, 635 P.2d 203 (Colo.1981), was proper. Although the General Assembly had changed the provisions of § 18–6–401(1), C.R.S. prior to the decision in *People v. Noble, supra*, that decision was based on the statute as it had existed prior to amendment. However, the court in *Noble, supra*, was fully aware that the statute had been changed, and its definition of "knowingly" applied to both versions of the statute. It held that the prosecution is required "to prove beyond a reasonable doubt the defendant's awareness that his physical actions toward the child were such as to endanger the child's life or health or to cruelly punish the child."

In *People v. Noble, supra*, as here, the defendant was acquitted of both extreme indifference murder and second degree murder, but was convicted of felony child abuse based upon an instruction which defined the offense only in terms of conduct and circumstances and not in terms of result. In both cases, the result which occurred was the death of the child. *Noble* is not rendered inapplicable by the fact that the prosecution here proceeded under the revised version of § 18–6–401(7)(a)(I), C.R.S. (1984 Supp.), in which a knowing act of child abuse resulting in the death of the child constitutes a Class 2 felony.

The child abuse statute does not require that the mental state of "knowingly" apply to the result. Rather, it clearly states that the mental state of "knowingly" applies *only* to the conduct involved. The penalty is based on the mental state of the actor during his conduct and on the ultimate injury to the child.

Child abuse contemplates inaction as well as action; therefore, an actor may knowingly inflict cruel punishment on a child through inactivity. *See People v. Jennings*, 641 P.2d 276 (Colo.1982). Here, defendant's inaction in failing to provide assistance or information regarding a child he knew had been seriously injured constituted an act of felony child abuse regardless of the defendant's specific awareness of the certainty of death. *See People v. Taggart*, 621 P.2d 1375 (Colo.1981). And, since the child's death was caused by defendant's inaction, it was unnecessary to define "knowingly" in terms of result. *See People v. Romero*, 689 P.2d 692 (Colo.App. 1984).

Alternatively, the evidence of defendant's guilt is so overwhelming that, even under the majority's analysis of the statute, any error in the instruction was harmless.

Defendant, six-feet five-inches tall and weighing 160 pounds, testified that he was caring for the three-month-old victim and her two-year-old brother while their mother, his girlfriend, was taking a shower. At approximately 10:00 a.m. two women came to the apartment to purchase marijuana. When defendant went into the bedroom to obtain his marijuana, he reached high into a closet, slipped, and fell backward. His foot landed on the victim, who was lying on the floor propped up on a pillow. Defendant testified that the victim appeared to be stunned, but he nevertheless left the room and completed the drug transaction.

Thereafter, two soldiers came to the door and indicated that they wanted to buy some marijuana as well. Defendant smoked some marijuana with them and then completed the sale. The victim had begun crying shortly after the arrival of these purchasers, but defendant did not check on her until after their departure.

He brought the baby into the living room, laid her down on the floor, and counted his money from the drug transactions. He noticed that the baby's lips were purple and that her hands and face were very cold, even though the temperature in the apartment was very warm.

The victim's mother came out of the shower and asked defendant what was wrong with the baby. Defendant told her he did not know, even though he testified that he knew then the child had suffered serious injury. When the victim's mother attempted to nurse the baby, the baby refused, and appeared to be trying unsuccessfully to cry. The victim's mother then stated that she was going to take the baby to the hospital, but defendant made no effort to attempt to obtain a ride for them or to secure emergency assistance. After two hours, the victim's mother was able to obtain a ride to the hospital, and defendant and the victim's two-year-old brother stayed at the apartment for a short time, then played video games at an arcade.

Defendant arrived at the hospital at approximately 5:30 p.m., and was told that the victim's injuries were very serious and that hospital personnel believed that the child had been abused. He was aware that exploratory surgery was being performed because the physicians were unable to determine what had caused the child's injuries. Even though he was repeatedly asked, he told no one what had happened to the victim. Indeed, defendant did not discuss his role in the incident until several months later.

The victim died later that night. The evidence established that, had she received medical attention within 10 to 15 minutes of her injury, she would have lived.

The defendant admitted that when the victim's extremities became cold and her lips turned purple in the apartment, he was aware she had sustained serious injuries as a result of his fall. For six hours he refused to answer repeated questions from

her mother about what had occurred. He made no attempt to telephone for help or to obtain a ride to the hospital. Instead he counted the money from his marijuana sales and played video games. This conduct establishes his culpability even under the majority's view that the mental state of "knowingly" applies to the result.

Consequently, regardless of the analysis used, I would affirm the conviction.