The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Randy SCHRUDER, Defendant-Appellant.

No. 85CA0098.

Colorado Court of Appeals, Div. III.

Dec. 11, 1986.

Rehearing Denied Dec. 31, 1986.

Certiorari Denied (Schruder) April 6, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Patricia Hummons Clark, Asst. Atty. Gen., John Daniel Dailey, Deputy Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colo. State Public Defender, Rachel A. Bellis, Deputy State Public Defender, Denver, for defendant-appellant.

BABCOCK, Judge.

Randy Gene Schruder appeals the judgment of conviction entered on jury verdicts finding him guilty of aggravated robbery, conspiracy, and commission of a crime of violence. We affirm.

The victim was walking home from a coffee shop on a dark street around midnight when he was approached by two men, who asked him for a cigarette and a light. While the victim was complying with this request, a third man came up behind him with a knife, demanding money and threatening to kill him. The victim had only small change, and the robbers made off with the change, a pack of cigarettes, matches, a lottery ticket, and the victim's watch. The victim ran home and called police.

Police broadcast the victim's description of the men, and defendant and two other men were apprehended a half mile from the scene. Defendant was searched after he refused to cooperate, and a knife was found in his pocket. All three men were searched, handcuffed, and placed in separate police cars. An officer arrived with the victim, who was asked to identify the men. The victim positively identified one of them, tentatively identified defendant, and did not identify the other.

After conferring for several minutes, the officers told the victim that they had recovered a knife from one suspect. They pulled defendant from the car, shined their lights in his face, and asked the victim to make a second identification. The victim then positively identified defendant as the man who had robbed him at knife point. The man whom the victim did not initially identify was not brought out for a second showup.

## I.

Defendant first contends that the trial court erred in denying his motion to suppress testimony concerning the out-of-court identification. He asserts that the showup was so impermissibly suggestive and presented such substantial risk of misidentification as to violate due process of law. Specifically, defendant contends that the police officers' statements regarding their discovery of the knife before the second identification unnecessarily suggested that defendant was the person who had robbed the victim earlier.

In denying the motion the trial court stated:

"The Court has considered the Motion to Suppress and does not find that there was anything unduly suggestive at the scene nor was there pressure after it occurred and there is no indication that there was influence of any kind by the police that affected the result of the victim's identification and the Court denies the Motion to Suppress."

An out-of-court identification procedure violates due process when the totality of the circumstances shows that the confrontation was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *People v. Borrego*, 668 P.2d 21 (Colo.App. 1983). Factors to be considered in evaluating the surrounding circumstances include the opportunity of the witness to view the accused at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the accused, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Neil v. Biggers, supra; Manson v. Braithwaite*, 432 U.S. 98, 97

S.Ct. 2243, 53 L.Ed.2d 140 (1977); *People v. Mascarenas,* 666 P.2d 101 (Colo.1983). Against these factors is to be weighed the corrupting effect of the suggestive procedure itself. *Manson v. Braithwaite, supra.* Moreover, while one-on-one showups do not *per se* violate due process, they are viewed with disfavor because of their strong potential for unnecessary suggestiveness. *People v. Mascarenas, supra.*

The trial court made no findings regarding the totality of the circumstances. Moreover, it applied an improper standard in admitting the identification testimony.

■ Nonetheless, we conclude that the trial court's erroneous treatment of the identification was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Graham v. People,* 705 P.2d 505 (Colo.1985); *People v. Swanson,* 638 P.2d 45 (Colo.1981).

At trial, the victim identified defendant without objection, the victim's watch which had been found in the seat of the police car occupied by defendant was admitted into evidence, and the jury was instructed on complicity. In response to the prosecution's evidence, defendant did not deny being present during the robbery, but asserted that he was not the person wielding the knife and that the victim had misidentified him as the armed member of the trio. He argues that by challenging the victim's out-of-court identification he would have been able to argue that he was merely a "passive participant" in the robbery.

■ However, "passive" participation would not have absolved the defendant from culpability for aggravated robbery, *see* § 18–4–302(1)(c), C.R.S. (1986 Repl.Vol. 8B), or crime of violence, *see People v. Swanson, supra,* and would have been irrelevant to the conspiracy charge. *See* § 18–2–201(1), C.R.S. (1986 Repl.Vol. 8B). Hence, any error relative to his being identified as the knife-wielding robber was harmless.

## II.

■ Defendant next contends that the trial court erred in failing to instruct the jury in the meaning of "overt act" relative to the conspiracy charge. We disagree.

An overt act in furtherance of a conspiracy is required for conviction of conspiracy. Section 18–2–201(2), C.R.S. (1986 Repl.Vol. 8B). "Overt act" is a legal term of art. *See COLJI–Crim.* No. 8(1) (1983). However, we conclude that failure to instruct the jury in its meaning did not constitute such error as would seriously affect defendant's substantial rights. *See People v. Barker,* 180 Colo. 28, 501 P.2d 1041 (1972).

The plain meaning of "overt act" is not so abstruse as to be incomprehensible to the average juror. The jury was properly instructed in the essential elements of the offense of conspiracy in understandable language; the law does not require more. *Hampton v. People,* 171 Colo. 101, 465 P.2d 112 (1970). Furthermore, since there was no dispute here that an overt act had been committed, failure to define "overt act" to utmost legal precision was not error. *See State v. Avila,* 147 Ariz. 330, 710 P.2d 440 (1985).

## III.

■ Lastly, defendant asserts that his conviction for both aggravated robbery and commission of a crime of violence violates double jeopardy and equal protection and that, therefore, his sentence must be vacated. However, in *People v. Haymaker,* 716 P.2d 110 (Colo.1986), the Supreme Court found no constitutional defect in the enhanced sentencing here at issue, and that holding is dispositive here.

The judgment is affirmed.

STERNBERG and CRISWELL, JJ., concur.