The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Willie Frank GUFFIE, Defendant–Appellant.

No. 83CA1193.

Colorado Court of Appeals, Div. I.

Aug. 20, 1987.

Rehearing Denied Oct. 8, 1987.

Certiorari Denied Feb. 8, 1988.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., David L. Saine, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Jane S. Hazen, Denver, Tegtmeier & Sears, P.C., Mary G. Allen, Colorado Springs, for defendant-appellant.

BABCOCK, Judge.

Defendant, Willie Frank Guffie, appeals the judgments of conviction entered on jury verdicts finding him guilty of first degree (felony) murder, first degree burglary, second degree assault, and two counts of aggravated robbery. We affirm.

During a night in August 1982, two robberies were reported to police within half an hour of each other. The victim of the first robbery reported that two black men had entered his home and bound and gagged him at gunpoint. The men left, taking the victim's guns and other property. In the second robbery, which occurred within blocks of the first, the victim and his girlfriend were awakened by gunshots. A black man then entered their room, ordered them to lie face down on their bed, and demanded money. After searching for the victim's wallet, the man left the room. The victim heard voices coming from the living room, then crashing noises and more shots, one of which hit him in the foot. After he heard the front door close, he went to check on his roommate, who was fatally wounded. The victim also noticed that his cassette deck was missing.

Police responding to the victims' calls stopped a car occupied by two black men, defendant and a companion. Based on objects seen in the car, which the victims later identified as stolen, police arrested both men. Although both defendant and the other man were charged with the same offenses, their cases were severed for trial.

I.

Defendant first contends that the instructions and verdict forms given to the jury constituted plain error because they contained a definition in the disjunctive of an essential element of felony murder that permitted the jury to return a verdict that was not unanimous as to that charge. We disagree.

Defendant was charged with first degree murder of the homicide victim during the commission of an aggravated robbery and, as a separate charge, with the aggravated robbery of the second victim and the girlfriend. The jury was instructed that, for purposes of the felony murder charge, defendant could be found guilty if the murder occurred during the aggravated robbery of either the decedent, the second victim, or the girlfriend. The special verdict form for aggravated robbery stated that the jury had found defendant guilty of the robbery of either the second victim *or* the girlfriend. Hence, although there were two victims of that robbery, the verdict form allowed the jury to find defendant guilty for the robbery of either of them.

Defendant argues that because the jurors could have been divided on who was the aggravated robbery victim, the conviction for felony murder was not the result of a unanimous verdict. Because defendant did not object to either the instruction or the verdict form at trial, review is under a plain error standard. Crim.P. 30 and Crim.P. 52(b). Thus, defendant must show not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to his conviction. *People v. Rubanowitz*, 688 P.2d 231 (Colo.1984).

■ Unanimity in a verdict means only that each juror agrees that each element of

the crime charged has been proven to that juror's satisfaction beyond a reasonable doubt. Jurors are not required to agree on what particular evidence is probative on a specific element of a crime, particularly if the evidence supports alternative theories of how that element occurred. *People v. Lewis*, 710 P.2d 1110 (Colo.App.1985).

■ Aggravated robbery is an element of felony murder, *see* § 18–3–102(1)(b), C.R.S. (1986 Repl.Vol. 8B); but it is not necessary that the robbery victim also be the murder victim. *See People v. Raymer*, 626 P.2d 705 (Colo.App.1980), *aff'd*, 662 P.2d 1066 (Colo.1983). Hence, the felony element of felony murder may be satisfied by a showing that the decedent was killed during the commission of an aggravated robbery of one of several alternative victims. It is therefore not necessary that jury members unanimously agree on the specific victim of the underlying felony in convicting a defendant of felony murder, provided each juror is convinced beyond a reasonable doubt of the aggravated robbery of any one or more of the alternative victims. *See People v. Lewis, supra.*

■ Because the crime of aggravated robbery is a lesser offense which merges into the greater offense of felony murder committed during an aggravated robbery, defendant could not be sentenced for both aggravated robbery and felony murder of the decedent. *See People v. Raymer*, 662 P.2d 1066 (Colo.1983). Thus, although defendant could not have been sentenced for both aggravated robbery and murder of the homicide victim, because the killing occurred during the aggravated robbery of three separate victims, the jury instruction that defendant could be convicted of felony murder committed during the robbery of either the decedent, the second victim, or his girlfriend was not error. *See People v. Lewis, supra; see also Bizup v. People*, 150 Colo. 214, 371 P.2d 786, *cert. denied*, 371 U.S. 873, 83 S.Ct. 144, 9 L.Ed.2d 112 (1962) (felony murder is committed when robbery and homicide are part of same continuous transaction).

■ Here, sufficient evidence was presented from which the jury could have found that defendant killed the homicide victim while robbing him or assisting in his robbery; there was also sufficient evidence that defendant robbed or assisted in the robbery of both the second victim and his girlfriend. The jury was properly instructed on complicity. Because there was sufficient evidence of alternative means of committing felony murder, jury unanimity as to the identity of an aggravated robbery victim of the underlying felony was not required. *See People v. Lewis, supra.* Thus, considering the entire record of this case, we cannot say that defendant was deprived of his right to a unanimous verdict on the felony murder conviction. *See People v. Noble*, 635 P.2d 203 (Colo.1981). Superceded by statutes as stated in *People v. Thompson*, 717 P.2d 972 (Col.App.1985).

■ Here, testimony established that the second victim and his girlfriend were robbed at the same time in the same room. Although we find no plain error, it would have been better to issue a special verdict form for each victim. However, there is no reasonable possibility that this instruction contributed to defendant's conviction.

## II.

■ Defendant next contends that the trial court erred in finding that police had reasonable suspicion to stop defendant's car, and that it therefore erred in denying his motion to suppress evidence and statements obtained as a result of the stop. Again, we disagree.

The facts of the stop are recounted in *People v. Weeams*, 665 P.2d 619 (Colo. 1983), an interlocutory appeal of a trial court ruling in the prosecution of defendant's companion:

"At approximately 1:15 on the morning of August 23, 1982, the Aurora police received a call reporting an armed robbery at 1135 Florence Street. The report described the suspects as two black males, twenty-five to thirty years of age, approximately 5′9″ tall, dressed in dark clothing, and wearing white tennis shoes. According to the radio report, the suspects were armed with a pistol, a sawed-

off shotgun, and a .38 caliber revolver taken from one of the robbery victims.

"At approximately 1:38 a.m., the Aurora police were notified of a second armed robbery at 1245 Emporia Street, two and one-half blocks from the first robbery. In the second criminal episode, one person was killed and another wounded. The suspects were again described in the police report as two black males.

"At 1:46 a.m., Lieutenant Sloan entered the vicinity. While driving into the area where the crimes were committed, he observed only two other vehicles, each occupied by a single white male. After arriving at the crime scene, he saw a vehicle occupied by two black males in their twenties, wearing dark clothing. He followed their vehicle for several blocks without seeing any other vehicles. Sloan and Officer Huffman used their public address system and directed the vehicle to stop."

■ An investigatory stop is proper when the officers conducting it have a reasonable suspicion that the individual has committed the crime, the purpose of the detention is reasonable, and the scope and character of the intrusion are reasonably related to its purpose. *People v. Weeams, supra; Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971).

Defendant contends only that the police officers who stopped him did not have a reasonable and articulable suspicion that he had committed a crime. In *People v. Weeams, supra,* our supreme court determined that the scope and character of the police intrusion upon this defendant was reasonable under the circumstances. However, it declined to say whether the trial court was correct in ruling there was a reasonable and articulable suspicion to support the stop. We now address that issue.

■ A court faced with the question of the sufficiency of the basis for an investigatory stop must determine whether the totality of the circumstances provided the officer with a particularized and objective basis for suspecting that an individual is or has been engaged in criminal activity. *People v. Bell,* 698 P.2d 269 (Colo.1985).

The factors material to a determination whether an investigatory stop is permissible include the particularity of the description of the offender or the vehicle in which he fled; the size of the area in which the offender might be found, as indicated by such facts as the time elapsed since the crime occurred; the number of persons about in that area; the known or probable direction of the offender's flight; observed activity by the particular person stopped; and knowledge or suspicion that the person or vehicle stopped has been involved in some criminality of the type presently under investigation. *People v. Mascarenas,* 666 P.2d 101 (Colo.1983); *People v. Bell, supra.*

Here, defendant and his partner generally fit the description of the suspects given, they were stopped near the vicinity of the reported offenses within half an hour of the first and within minutes of the second, and defendant and his partner were the only persons matching the descriptions about in the area at that time. Under these circumstances, the trial court correctly determined that, based on the facts known to the officers immediately before the stop, they had a reasonable and articulable suspicion that defendant had been engaged in criminal activity of the type reported sufficient to justify an investigatory stop. *See People v. Johnson,* 199 Colo. 68, 605 P.2d 46 (1980); *People v. Bell, supra.*

### III.

■ Defendant next contends that the trial court erred in allowing testimony on both out-of-court and in-court identification by the second robbery victim. He argues that the victim did not have sufficient opportunity to observe the assailant during the robbery and that the police showup was so unnecessarily suggestive as to violate due process of law. We disagree.

After defendant was arrested, police officers brought him to the second victim's home for a one-on-one showup. Less than an hour had passed since the second robbery. Viewing defendant from a distance

of ten to 12 feet, the victim positively identified him as the robber.

Defendant moved to suppress identification. At the suppression hearing, the victim testified that when the assailant entered his bedroom and pointed a gun at him, he saw him in bright light for a minute before he was ordered to roll over; he also testified that he glanced over his shoulder several times while the assailant was in the room. The victim's description of his assailant was also consistent with defendant's characteristics. Concerning the showup, the victim testified that he identified defendant immediately as the man who had entered his bedroom and, when asked if he was positive of the identification, replied that he was. He also testified that police officers did not indicate anything about defendant either before or after the showup.

Based on this testimony, the trial court found that the showup was not unduly suggestive, and concluded that, under the circumstances, there was an adequate basis for identification independent of the showup. The motion to suppress was denied.

■■■ An out-of-court identification procedure violates due process when the totality of the circumstances shows that the confrontation was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. *People v. Mascarenas, supra; People v. Schruder,* 735 P.2d 905 (Colo.App.1986). Although one-on-one showups are not favored because of their strong potential for unnecessary suggestiveness, they do not *per se* violate due process. *People v. Mascarenas, supra; People v. Schruder, supra.* Factors to be considered in evaluating the surrounding circumstances include the witness' opportunity to view the accused at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the accused, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *People v. Mascarenas, supra; People v. Schruder, supra.*

■■■ Here, we agree with the trial court that the showup was not unduly suggestive. Unlike the showup in *People v. Schruder, supra,* where police told the victim that the suspect had a knife, the police officers here made no suggestive comments about the defendant. Moreover, any suggestiveness inherent in the one-on-one showup was offset by the totality of the circumstances, including the witness' opportunity to view the accused during the crime, his degree of attention, the accuracy of his prior description, the certainty demonstrated at the showup, and the brief time between the crime and the confrontation. In addition, these factors established a sufficient observational basis, independent of the showup, for the victim's in-court identification of defendant. *See People v. Horne,* 619 P.2d 53 (Colo.1980). Hence, the trial court did not err in admitting testimony relating to the victim's identification of defendant, and defendant was therefore not denied due process of law.

## IV.

■■■ Defendant also contends that the trial court erred in refusing to sever the count concerning the first robbery from the counts arising from the second robbery. We disagree.

A court may order separate trials of counts if a defendant is prejudiced by a joinder of offenses. Crim.P. 14. A ruling on a motion to sever counts is within the sound discretion of the trial court and will not be disturbed unless an abuse of discretion has been shown. *People v. Pickett,* 194 Colo. 178, 571 P.2d 1078 (1977); *People v. Gregory,* 691 P.2d 357 (Colo.App.1984). To establish abuse of discretion, more is required than a showing that separate trials might afford the defendant a better chance of acquittal. *People v. Gregory, supra.* There must be actual prejudice to the defendant and not just the differences inherent in any trial of different offenses. *People v. Pickett, supra; People v. Gregory, supra.*

■■■ The trial court found that the circumstances of the two cases were so intertwined that they should be tried together,

and that defendant had failed to demonstrate actual prejudice. Defendant nonetheless argues that because he denied participating in the first robbery, but admitted being present at the second, he was prejudiced by having to testify about both incidents at one trial. Had the trials been severed, he maintains, he would have declined to testify as to the first robbery.

■ However, the mere fact that a defendant wishes to testify on one count and not on another does not automatically entitle him to severance under Crim.P. 14. The defendant must make a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. *People v. Walker,* 189 Colo. 545, 542 P.2d 1283 (1975); *People v. Early,* 692 P.2d 1116 (Colo.App.1984).

Since defendant has failed, both in his appellate brief and in his original motion, to make the required showing of strong need to refrain from testifying on the first robbery count, he was not entitled to severance based solely on his desire to testify on less than all counts with which he was charged. *See People v. Early, supra.* The trial court thus correctly determined that defendant had not made the showing of actual prejudice required for severance of counts, *see People v. Pickett, supra,* and, because of the close connection of the crimes, its denial of the motion to sever was not an abuse of discretion. *See People v. Wortham,* 690 P.2d 876 (Colo.App.1984); Crim.P. 8(a).

## V.

■ Finally, defendant contends that the trial court abused its discretion in admitting photographs of the homicide victim as exhibits. Defendant argues that the pathologist's use of a diagram to illustrate that victim's bullet wounds made the admission of the photographs and their viewing by the jury unnecessary, and asserts that they were so inflammatory that any probative value was far outweighed by their prejudicial effect. We disagree.

■ Admissibility of photographs of the victim in a homicide prosecution is within the sound discretion of the trial court. *People v. Viduya,* 703 P.2d 1281 (Colo. 1985); *People v. Marquiz,* 685 P.2d 242 (Colo.App.1984), *affirmed,* 726 P.2d 1105 (Colo.1986). The probative value of the photographs must be weighed against any undue prejudice to the defendant that may result from the jury's viewing them. CRE 403; *People v. White,* 199 Colo. 82, 606 P.2d 847 (1980). The trial court's ruling on whether otherwise relevant photographs are unnecessarily gruesome or inflammatory, or are otherwise unfairly prejudicial to the defendant will not be reversed unless an abuse of discretion is shown. *People v. Mattas,* 645 P.2d 254 (Colo.1982); *People v. Viduya, supra.*

■ Photographs of the deceased may have probative value to show the victim's identity and appearance, or the location and nature of wounds, and their admission is not precluded because these matters have been established through the testimony of prosecution witnesses. *People v. Viduya, supra; People v. White, supra.* Hence, the pathologist's testimony and use of a diagram to show the victim's wounds did not render the photos either irrelevant or nonprobative. *See People v. White, supra; People v. Marquiz, supra.*

Here, the photos were relevant to show the victim's identity and the extent and nature of his wounds. Although the trial court found that the photos were inflammatory, it concluded that their probative value outweighed any prejudice. We cannot say that the trial court abused its discretion in so ruling. *See People v. Viduya, supra; People v. White, supra.*

Judgment affirmed.

PIERCE and VAN CISE, JJ., concur.