## No. 25583

### The People of the State of Colorado v. John J. Tucci
(500 P.2d 815)

Decided September 5, 1972.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Richard T. Spriggs, Assistant, for plaintiff-appellant.

Kettelkamp and Vento, W. C. Kettelkamp, Jr., Levi Martinez, for defendant-appellee.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

This is an interlocutory appeal by the People to review an order of the trial court granting defendant's motion to suppress evidence. We disapprove the ruling.

The defendant operated a business known as the Main Oil Company. On February 10, 1971, he was arrested and charged with theft of state funds by filing false motor fuel tax refund claims. Coincident with the defendant's arrest, law enforcement officers executed a warrant to search the premises occupied in part by the Main Oil Company and in part by the defendant as his residence.

The items described in the warrant consisted of certain

business records of the Main Oil Company and the defendant for the period January 1, 1970, to February 10, 1971. This search resulted in the seizure of several thousand documents. Many of the documents seized were dated prior to 1970, and thus were outside the scope of the search warrant. The trial court granted defendant's motion to suppress *all* documents seized after finding that the search was of a general exploratory nature and therefore unreasonable under the state and federal constitutions. In making its finding, the trial court appeared to be concerned with the quantity of items seized by the officers.

## I.

The description of property in the search warrant was quite lengthy, including practically all business records of the Main Oil Company and the defendant for the period indicated. The People argue that the search and seizure of a large quantity of business records for a stated period does not, in itself, constitute an exploratory search and seizure. We agree that the quantity of items listed in a search warrant or the quantity of items seized during the execution of a warrant does not necessarily have any bearing on the validity of the search itself. This is particularly true where a business record system is allegedly being used in the commission of a crime.

"[I]t is not how many items may be seized that determines validity of a search. The rule against general exploratory searches is not aimed against quantity, nor even designed to protect property quantitatively, but, instead, is designed to prevent *indiscriminate* searches and seizures that invade privacy." *Anglin v. Director, Patuxent Institution,* 439 F.2d 1342 (4th Cir. 1971).

## II.

The Attorney General contends that the search was not of a general or exploratory nature because the officers conducting the search entered the defendant's premises for the purpose of seizing specific business records and the search was conducted in a manner reasonably calculated to uncover such records. *See Hernandez v. People,* 153 Colo. 316, 385

P.2d 996 (1963). The People concede that documents seized which were outside the scope of the warrant should be suppressed.

During the suppression hearing, the method of search was described by the officer in charge of executing the search warrant:

"Q Now, with respect to the execution of this warrant, Mr. Whiteside, was it your understanding that you were to take all of the records out of Main Oil Company or just records for a prescribed period of time?

"A It was my understanding we were to take business records of Main Oil Company and John Tucci for the period from January 1, 1970, to February 10th, I believe it was, 1971.

"Q All right. So that would just be the records for 1970 and — well, from January, 1970 to the present time, is that correct?

"A Yes, sir.

"Q All right. Now, in seizing the various items that were taken, did you make any attempt to distinguish between those records which related to that period and those records which related to prior periods?

"A Yes. It was done the following way: The files were marked that were in his office in the main office, and dates, we tried to look for dates which reflected which periods of time they would cover.

"Q Were there records in the office for periods other than 1970 to the time of the raid?

"A Yes, sir.

"Q Covering what period of time?

"A 1969.

"Q All right. And where were those 1969 records located?

"A They were located in the main office in the file cabinets.

"Q All right. Were they seized?

"A Anything that we could determine labeled '1969' was not seized. In fact, we asked some of the bookkeepers there to help us, so if it had '1969' on the outside of the filing cabinet, we did not seize it.

\* \* \*

"Q Now, I realize you can't do this with any great precision, but could you approximate for us the quantity of records you took from the office in the Main Oil Company with respect to the quantity of records you left behind?

"A I would say that we probably left one-third of the records behind which would have been '69.

"Q Now, with respect to the records which you did seize for the periods of 1970 through February of 1971, did you make an attempt to ascertain whether the records that you seized were, in fact, covered by the description of the records to be seized pursuant to the search warrant?

"A We tried as much as reasonably possible. For instance, we would look at the folders. If the folder was marked 'Farmers and Ranchers' List for 1970,' we would take that after it was marked. Each folder then was marked. The accounts of farmers and ranchers in the 1970 file, we would seize that. We seized ledger cards which probably had dates going way back beyond that, but they were current records, they were cards posted to in 1970, so we had no alternative but to take those."

Although the search was not as carefully or thoroughly conducted as it might have been, we cannot say that it was exploratory. We agree with the following statement in *United States v. Russo,* 250 F. Supp. 55 (E.D. Pa. 1966):

"The entire search would only seem to become invalid if its general tenor was that of an exploratory search for evidence not specifically related to the search warrant . . ."

It cannot be said that the general tenor of this search was that of an exploratory search for evidence not specifically related to the warrant. The evidence is without conflict that the persons executing the warrant were trying in good faith to obtain documents relating to the prescribed period. This being so, the ruling of the trial court requiring suppression of all evidence obtained during the search of defendant's premises is disapproved. It will be necessary for the trial court to conduct a further hearing concerning the suppression of specific articles seized outside the scope of the warrant, pursuant to the procedures described in *People v.*

*Henry,* 173 Colo. 523, 482 P.2d 357 (1971), and *People v. Wilson,* 173 Colo. 536, 482 P.2d 355 (1971).

### III.

██ The defendant argues that the ruling of the trial court should be affirmed on the ground that the search and seizure of defendant's business records violates his privilege against compulsory self-incrimination under the Fifth Amendment to the United States Constitution. The ruling of the trial court was not based on this argument. In support of this contention, the defendant relies on *Hill v. Philpott,* 445 F.2d 144, *cert. denied,* 404 U.S. 991, 92 S.Ct. 533, 30 L.Ed.2d 542 (7th Cir. 1971). We are more persuaded by the reasoning of the court in *United States v. Blank,* 459 F.2d 383 (6th Cir. 1972). In *Blank,* the court held that the seizure of gambling records did not violate the defendant's privilege against self-incrimination because the defendant was not "compelled" to produce the papers; the papers were not communicative in nature; the papers were business records of which others must have knowledge, rather than personal and private writings; and the papers were instrumentalities of the crime with which defendant was charged.

We do not believe that the defendant here was compelled to testify against himself when law enforcement officers seized records of his business which were allegedly being used in furtherance of the crime with which the defendant was charged.

### IV.

We do not find merit in the other arguments advanced by the defendant.

Accordingly, the ruling of the trial court is disapproved and the trial court is directed to proceed consonant with views expressed herein.

MR. JUSTICE ERICKSON dissenting.

MR. JUSTICE DAY not participating.