The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Billy R. LEWIS and Allied Research & Marketing, Inc., d/b/a Allied Research, Inc., a corporation, Defendants-Appellants.

No. 80CA0271.

Colorado Court of Appeals, Div. II.

March 14, 1985.

Rehearing Denied April 25, 1985.

Certiorari Denied Dec. 2, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Dolores S. Atencio, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Mary G. Allen, Boulder, for defendants-appellants.

SMITH, Judge.

Defendants, Billy R. Lewis and Allied Research & Marketing, Inc., a corporation, (Allied) appeal from the judgments of conviction entered pursuant to jury verdicts finding Lewis guilty of one count of theft over $10,000, eight counts of theft over $200 but less than $10,000, and one count of conspiracy to commit theft over $10,000, and finding Allied guilty of the theft counts. We affirm.

Billy R. Lewis was owner and president of defendant Allied. Allied was ostensibly

in the business of assisting inventors in the development and marketing of their ideas.

The prosecution presented evidence that for a fee of $1500 to $2450, Allied promised to prepare a "product portfolio" for the purpose of communicating the inventor's idea to potential manufacturers. It promised that such a product portfolio would contain a patent search, drawings of the product, a product description, a production cost analysis, an advertising media study, a marketing study, a product distribution study, and an estimated pricing analysis. But, the prosecution's evidence showed that in each instance the portfolios produced contained substantially identical information that was very general in nature.

Former employees of Allied testified that the bulk of all information contained in each portfolio was reproduced unchanged from Allied's word processor. Another former employee testified that the patent information was often inaccurate and erroneous. Former Allied employees also testified that Allied routinely misrepresented its expertise, past success, and business contacts in order to induce inventors to pay Allied to prepare the portfolios presenting their ideas.

The jury heard testimony from the 16 victims involved in this case. These victims testified that they had relied upon Allied's representation that Allied's evaluation committee determined that the inventor's idea was good enough to justify the expense of having a product portfolio prepared. The victims testified that if an inventor balked at paying the fee, he was told that if he hurried, Allied could get his idea included in an upcoming trade show that would be attended by manufacturers.

A former Allied employee testified that no evaluation committee in fact existed and that every idea that did not involve food, chemicals, or perpetual motion machines was evaluated as a "good idea" as long as it appeared that the client could afford the cost of preparing a product portfolio. There was also testimony that no Allied personnel attended trade shows.

The evidence disclosed that Lewis was in the Allied office on a regular basis and that he hired and paid all personnel, approved of the portfolio contents and their method of compilation, and was generally in charge of and supervised all of Allied's activities.

## I.

Defendants first contend that the trial court erred in denying their motion to suppress evidence obtained pursuant to a search warrant. We disagree.

In a four-page affidavit for a search warrant, the affiants, investigators for the Metropolitan District Attorneys Consumer Office, set forth in detail the results of interviews conducted with former customers and employees of Allied. The information set forth in the affidavit portrayed Allied as perpetrating a continuous scheme of deception upon its customers. The affidavit alleged that Allied's employees commonly made representations about services they could render that they had no capability of performing. The affidavit also alleged that Allied used "Mag Card" forms to mass produce client product portfolios. Allied then allegedly perpetuated this fraud by means of a tickler system that sent bogus progress reports to the clients.

Based on this affidavit, a warrant was issued, and pursuant to this warrant, virtually all Allied's client files, business records, bookkeeping records, and office equipment were seized.

## A.

Defendants first argue that because the affidavit fails to mention the date of the offenses or exactly what the victims paid to defendants, it fails to establish probable cause to search.

In a related case involving Lewis' brother, this court found that the identical affidavit involved herein was sufficient to establish probable cause. *People v. Lewis*, 671 P.2d 985 (Colo.App.1983). We accept

the reasoning and follow the ruling in that case.

### B.

Defendants next argue that the scope of the search should have been limited to evidence related directly to the victims listed in the affidavit, and that the warrant issued improperly authorized a general search. We disagree.

"[T]he quantity of items listed in a search warrant or the quantity of items seized during the execution of a warrant does not necessarily have any bearing on the validity of the search itself. This is particularly true where a business record system is allegedly being used in the commission of a crime." *People v. Tucci,* 179 Colo. 373, 500 P.2d 815 (1972). A warrant will only be characterized as authorizing an impermissible general search if the facts surrounding the search indicate it was an exploratory search for evidence not specifically related to the search warrant. *See People v. Tucci, supra,* quoting with approval *United States v. Russo,* 250 F.Supp. 55 (E.D.Pa.1966). When the crime allegedly committed encompasses the entire business operation of the place searched, it is permissible to seize all files of the business. *See United States v. Hershenow,* 680 F.2d 847 (1st Cir.1982); *United States v. Brien,* 617 F.2d 299 (1st Cir.1980), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273.

Here, it can be inferred from the affidavit that the sole purpose of Allied's entire business operation was to defraud and deceive its customers. It is also apparent from the affidavit that its entire business record system was instrumental in committing the crime charged. Although virtually all records and equipment of Allied were sought, the facts surrounding the warrant indicate that all evidence sought was specifically related to proof of the crime alleged to have been committed in the affidavit. Hence, we hold that the trial court did not err in denying the defendant's motion to suppress the evidence obtained pursuant to the search warrant.

### II.

Defendant Lewis next contends the trial court erred in giving an instruction explaining the application of the "exercise control" element of theft. We disagree.

The instruction complained of reads as follows:

"It is not necessary that a person maintain absolute control of the thing of value for his own personal use in order for him to be criminally liable. It is sufficient that the intended use of the money be inconsistent with the owners' use or benefit."

In separate instructions, all elements of theft were stated, with the instruction that they had to be proved beyond a reasonable doubt, a general reasonable doubt instruction was given, and an instruction on causative force was given.

Lewis argues that the quoted instruction was misleading in that it allowed the jury to find him guilty based on corporate conduct without requiring it to find that he was the causative force behind the conduct. He also contends the instruction relieved the prosecution of its burden of proving each element of the offense beyond a reasonable doubt.

The instruction complained of is a correct statement of the law. It defines one of the elements of theft in the context of the prosecution of an individual for corporate conduct. *See People v. Treat,* 193 Colo. 570, 568 P.2d 473 (1977). In determining the propriety of any one instruction, the instructions must be considered as a whole, and if the instructions as a whole properly instruct a jury, then there is no error. *Chambers v. People,* 682 P.2d 1173 (Colo.1984).

Here, the jury was instructed that Lewis could only be found liable for corpo-

rate conduct if such conduct was knowingly performed or caused by him. Considering the jury instructions as a whole, we conclude the jury was properly instructed, and the trial court did not err in giving this instruction.

### III.

Defendants next contend that the trial court erred in denying their motion for mistrial based upon prosecutorial misconduct.

During an evidentiary argument before the jury, the prosecutor stated that he wanted to cross-examine defendant Lewis' brother concerning certain matters. At the time, the prosecutor was fully aware that Lewis' brother was unavailable as a witness because he had also been indicted and was awaiting trial on the same type of offenses charged against Lewis. The jury was ordered to disregard the prosecutor's comments. In response to defendant's motion for mistrial based on the prosecutor's remark, the trial court denied the motion, ruling that the remark, though unfortunate, was not so prejudicial as to require a mistrial.

■ The grant or denial of a motion for mistrial is within the sound discretion of the trial court and will not be disturbed on appeal absent a gross abuse of discretion prejudicing the defendants. *Massey v. People*, 649 P.2d 1070 (Colo.1982).

■ Here, the trial court immediately instructed the jury to disregard the remark. The remark was brief in duration and miniscule in effect compared to the huge volume of evidence properly admitted in the defendants' six-week trial. Although the prosecution erred in making this remark, the trial court did not abuse its discretion in denying a mistrial.

### IV.

Defendants next contend that they were denied a unanimous verdict on the first count of the indictment. We disagree.

Defendants were charged in this count with theft over $10,000, a violation of § 18–4–401(4), C.R.S. (1978 Repl. Vol. 8), and a class 3 felony. This section provides:

"When a person commits theft twice or more within a period of six months without having been placed in jeopardy for the prior offense or offenses, and the aggregate value of the things involved is two hundred dollars or more but less than ten thousand dollars, it is a class 4 felony; however, if the aggregate value of the things involved is ten thousand dollars or more, it is a class 3 felony."

Although the jurors were instructed that their verdict on the first count must be unanimous, they were not specifically instructed that they had to agree unanimously upon which two or more of the eight offenses had been proven, in order to find defendants guilty of that count.

To prove the first count, the prosecution introduced evidence that defendants had committed eight separate thefts against the eight different people named in that count; that these thefts occurred within a six-month period; and that the aggregate amount involved exceeded $10,000. The evidence was undisputed that the amounts obtained by defendant from each alleged victim during the six month period in question varied from $1,800 to $2,350. Defendants did not dispute the amounts, the dates involved, or the identities of the alleged victims. Their sole contention relative to this count was that the transactions in question did not constitute theft.

Instruction No. 18 dealt expressly with count one. After setting out the elements of theft, it directed that the jury was to find the defendants guilty of theft over $10,000 *only* if it found that the aggregate value of the thefts equalled or exceeded $10,000, and that such value resulted from two or more thefts committed within a six month period. A separate verdict form was submitted to the jury on this count. The verdict form posed three alternatives; not guilty, guilty of theft between $200 and

$10,000, and guilty of theft of $10,000 or over. No objection was interposed to either Instruction 18, or to the verdict form, and no separate unanimity instruction was requested. A unanimous verdict, as to count one, was returned finding the defendants guilty of theft over $10,000.

Unanimity in a verdict means only that each juror agrees that each element of the crime charged has been proven to that juror's satisfaction beyond a reasonable doubt. Jurors are not, however, required to be in agreement as to what particular evidence is believable or probative on a specific issue or element of a crime, particularly where there is evidence to support alternative theories as to how an element of a crime came to occur. *See People v. Noble*, 635 P.2d 203 (Colo.1981).

Here, if each juror was convinced, beyond a reasonable doubt, that *any* two or more of the eight alleged thefts were committed by defendants within a six month period aggregating more than $10,-000 in value, they were unanimous in concluding that each element of count one had been proven. It was not necessary that each juror agree on the same thefts, merely that they all agree that two or more had been proven, aggregating $10,000 or more. It was, therefore, not error for the court to fail, *sua sponte*, to give a specific unaminity instruction. The general unanimity instruction, in light of the specific instruction relative to count one, was sufficient.

## V.

Defendants next contend that the trial court erred in admitting hearsay statements of co-conspirators. We disagree.

A statement made by a co-conspirator of a party during the course and furtherance of the conspiracy is admissible and is not hearsay. CRE 801(d)(2)(e); *People v. Best*, 665 P.2d 644 (Colo.App.1983). Prior to admission of such a statement, there must, however, be proof of the conspiracy independent of the co-conspirator's

statement. *People v. Small*, 631 P.2d 148 (Colo.1981). Proof of the existence of the conspiracy may be circumstantial. *People v. Braly*, 187 Colo. 324, 532 P.2d 325 (1975). For this purpose, it is not necessary that the conspiracy be proved beyond a reasonable doubt. It is only necessary that a *prima facie* case of conspiracy exists. *People v. Gable*, 647 P.2d 246 (Colo.App. 1982). The question of admissibility of a co-conspirator's statement is one for the trial court. CRE 104(a).

Here, the record supports the trial court's finding that independent evidence of conspiracy had been presented and that the declarants, employees of Allied, were conspirators. The evidence clearly allowed an inference that Lewis was involved in the day-to-day affairs of Allied and that he and Allied's various other employees conspired to commit theft by deception. A prima facie case having thus been made, the trial court did not err in admitting the co-conspirator's statements.

## VI.

Defendants next contend that the evidence was insufficient to support the various verdicts. We disagree.

Evidence is sufficient to support a guilty verdict if, when the evidence is viewed in a light most favorable to the prosecution, a jury could reasonably conclude therefrom that each material element of the offense had been proven beyond a reasonable doubt. *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973).

A person commits theft by deception when he knowingly obtains or exercises control over anything of value of another by deception and intends to deprive the other person permanently of the use or benefit of the thing of value. Section 18-4-401, C.R.S. (1978 Repl. Vol. 8). The crime of theft by deception requires proof that in reliance upon misrepresentations by defendant, the victim parts with something of value. *People v. Ferrell*, 197 Colo. 253, 591 P.2d 1038 (1979); *People v. Terranova*, 38 Colo.App. 476, 563 P.2d 363 (1976). A misrepresentation is a false representation of a past or present fact or a promise to

perform a future act made with the present intention not to perform the promise or future act. *Stalos v. Booras,* 34 Colo.App. 252, 528 P.2d 254 (1974).

As to each victim, the record contains testimony of numerous false representations made by Allied representatives as to the feasibility, marketability, and profitability of the victim's idea, and as to Allied's past successes and experience in the development and marketing of inventions. Each of the victims testified that they relied upon the false representations when they paid Allied to develop their inventions. This evidence, considered in the light most favorable to the prosecution, amply supports the jury verdicts.

Defendants' remaining contentions are without merit.

Judgments affirmed.

VAN CISE and STERNBERG, JJ., concur.