The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Daniel S. ROCCAFORTE Jr., Michael Roccaforte and Martin Petroleum, Inc., Defendants–Appellees.

No. 96SA52.

Supreme Court of Colorado, En Banc.

June 24, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, John Daniel Dailey, Deputy Attorney General, Terrence A. Gillespie, First Assistant Attorney General, Steve Radetsky, Assistant Attorney General, Special Prosecutions Unit, Criminal Enforcement Section, Denver, for Plaintiff–Appellant.

Rick Budd, P.C., Rick Budd, Aurora, for Daniel S. Roccaforte, Jr.

Robert S. Berger, P.C., Robert S. Berger, Denver, for Michael Roccaforte.

Justice KOURLIS delivered the Opinion of the Court.

The prosecution brings this interlocutory appeal pursuant to section 16–12–102(2), 8A C.R.S. (1986), and C.A.R. 4.1 challenging the trial court's order suppressing evidence obtained from searches of Defendant Daniel Roccaforte's residence and of a storage space rented by Defendant Martin Petroleum, Inc. Defendants Daniel Roccaforte, Jr., Michael Roccaforte and Martin Petroleum, Inc. were charged with theft,[1] conspiracy,[2] filing false tax returns,[3] tax evasion,[4] and failure to truthfully account for and pay over taxes.[5] Defendants moved to suppress all evidence obtained from searches authorized by search warrants issued to the Colorado Department of Revenue Agents by the Larimer County Court. The trial court found that the warrants failed to meet the particularity requirement of the Fourth Amendment to the United States Constitution. We hold that the search warrants were sufficiently particular to withstand constitutional scrutiny under the facts of this case. Accordingly, we reverse the trial court's suppression order and remand the case for further proceedings consistent with this opinion.

## I.

Prior to June 1993, Martin Petroleum, Inc. ("MPI") had been a wholesale fuel distributor with its principal place of business in Fort Collins. MPI was owned 60% by Daniel Roccaforte's wife, Anna, and 40% by Daniel Roccaforte's son, Michael Roccaforte. Daniel, Anna, and Michael all worked in the business.

In April, 1993, Colorado Department of Revenue Agent Karen Shaw conducted a preliminary examination of department records in an effort to reconcile MPI's state fuel tax liability with the amount of fuel it had distributed during the period January 1, 1992, through February 28, 1993. Agent Shaw determined that the tax for over 700,-000 gallons of fuel distributed in that period was not accounted for in MPI's motor fuel tax returns filed with the department. She arranged with Daniel Roccaforte to audit MPI's fuel returns on June 21, 1995.

By June 21, however, the defendants had closed down their business and had moved MPI's business records to Daniel Roccaforte's residence and to a rental storage space. Consequently, the audit was not conducted because Agent Shaw could not gain access to MPI's records. On July 7, Agent Shaw referred the case to the Criminal Investigation Section of the Tax Audit and Compliance Division of the Colorado Department of Revenue. The case was assigned to Agent Floyd O. Leonard.

On July 29, 1995, Agent Leonard appeared before the Larimer County Court to obtain one search warrant for the home of Daniel Roccaforte and another for the rental storage space. In the affidavit submitted in support of the warrants, Agent Leonard alleged probable cause to believe that the defendants had willfully failed to collect, account for and pay over Colorado gasoline and special fuel tax to the Department of Revenue. These allegations were supported by Agent Shaw's preliminary investigation of department records and by defendants' relocation of MPI's business records which avoided audit. The issued warrants authorized searches for:

[A]ll books and records including registers, ledgers, journals, delivery slips, bills of lading, purchase orders, purchase invoices, records of bank deposits, checks, bank statements, safe deposit box identification information, contracts, leases, correspondence, photographs, wage withholding registers, financial statements, tax returns, worksheets, contracts, work orders, billing invoices, records of transfers of funds, and any other business related documents in the name(s) of Martin Petroleum, Inc. and Daniel Roccaforte Jr. or Anna Roccaforte or Michael Roccaforte for the period June 1, 1991 through June 30, 1993.

1.  § 18–4–401(2)(d), 8B C.R.S. (1994 Supp.).

2.  §§ 18–2–201 and 18–2–206, 8B C.R.S. (1986 & 1994 Supp.).

3.  § 39–21–118(4), 16B C.R.S. (1994).

4.  § 39–21–118(1), 16B C.R.S. (1994).

5.  § 39–21–118(2), 16B C.R.S. (1994).

Agent Leonard stated in his affidavit that these records and documents were seizable as material evidence of a crime. He stated that the items would be pertinent to a computation of the Colorado fuel tax not truthfully reported and would be used to demonstrate that the defendants acted willfully as required by the relevant statutes.[6]

Upon issuance of the warrants, department agents, along with officials from the Fort Collins Police Department, conducted searches of Daniel Roccaforte's home and of the storage space. During the search of the residence, computer equipment and printouts connected with MPI's business were discovered but not seized. On July 30, Agent Leonard again appeared before the county court and obtained a third search warrant worded identically to the first two but adding "electronically stored data" to the list of things to be seized. The preponderance of items ultimately seized consisted of boxes of documents and computer equipment with data for the then defunct MPI.

In its ruling on defendants' motions to suppress the evidence, the trial court concluded that the search warrants were, in effect, "all records" warrants. The court, citing *People v. Lewis*, 710 P.2d 1110 (Colo. App.1985), stated that "all records" warrants are available only when "evidence of the alleged crimes would arguably permeate the entire financial landscape" of the business. In this case, the trial court found that the allegations of fuel tax fraud were narrow in scope and implicated only a discrete part of the defendants' business. Accordingly, it reasoned that the search warrants should have been drafted more narrowly. Since "all records" warrants were not justified under the circumstances, the court held that the warrants allowed an overbroad search in violation of the Fourth Amendment.

Further, in response to the prosecution's argument that the overbroad parts of the warrant should be severed, the court held that since the warrants were facially invalid due to their lack of particularity, the doctrine of severance could not salvage them. The court cited two Ninth Circuit cases, *United States v. Spilotro*, 800 F.2d 959 (9th Cir.

1986), and *United States v. Cardwell*, 680 F.2d 75 (9th Cir.1982), in support of its holding.

Lastly, the trial court dealt with the issue of whether the Good–Faith Exception to the warrant requirement applied. Citing dictum in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the court held that the Good–Faith Exception did not apply because the warrants were general, "all records" warrants and the executing officers could not have reasonably believed they were valid. Thus, finding the warrants facially defective in light of the Fourth Amendment, the court ordered all the evidence seized from the searches suppressed. We disagree with the trial court's conclusions.

## II.

The Warrants Clause of the Fourth Amendment states that a warrant must "particularly describ[e] ... the persons or things to be seized." U.S. Const. Amend. IV. The primary function of the particularity requirement of the Warrants Clause is to ensure that government searches are "confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985). The policy behind the requirement is to prevent officers from conducting a "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). The principal means of effectuating the requirement is to suppress all evidence seized pursuant to an overbroad, general warrant. *United States v. Christine*, 687 F.2d 749, 757 (3d Cir.1982).

*Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927) sets forth the most frequently cited rationale for the particularity requirement: "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is

---

**6.** See *supra* notes 1–5.

taken, nothing is left to the discretion of the officer executing the warrant." This laudatory goal has proven somewhat impractical, however, because at some point during any search the executing officer must exercise his or her judgment in applying the language of the warrant to the premises to be searched. *See* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* § 4.6(a) at 551–52 (3d ed.1996). Thus, the courts have turned to a more practical standard: whether the description in a warrant is sufficiently particular that it enables the executing officer to reasonably ascertain and identify the things authorized to be seized. *United States v. Leary,* 846 F.2d 592, 600 (10th Cir.1988); *United States v. Wolfenbarger,* 696 F.2d 750, 752 (10th Cir. 1982); *United States v. Wuagneux,* 683 F.2d 1343, 1348 (11th Cir.1982); *People v. Noble,* 635 P.2d 203, 209 (Colo.1981).

### A.

■ Defendants contend that the warrants in this case were general "all records" warrants which entirely fail to meet the particularity requirement of the Fourth Amendment. As such, the defendants argue that all of the evidence seized pursuant to the warrants was correctly suppressed by the trial court. While certainly broad in scope, "all records" warrants do not automatically fail the particularity requirement because "the quantity of items listed in a search warrant or the quantity of items seized during the execution of a warrant does not necessarily have any bearing on the validity of the search itself." *People v. Tucci,* 179 Colo. 373, 375, 500 P.2d 815, 816 (1972).

> "It is not how many items may be seized that determines the validity of a search. The rule against general exploratory searches is not aimed against quantity, nor even designed to protect property quantitatively, but, instead, is designed to prevent *indiscriminate* searches and seizures that invade privacy."

*Id.,* 500 P.2d at 816–17 (quoting *Anglin v. Director, Patuxent Institution,* 439 F.2d 1342 (4th Cir.1971)). Thus, while we agree that the warrants at issue were essentially "all records" warrants, this finding is not dispositive of the question of whether they were sufficiently particularized to be valid.

■ An "all records" warrant is appropriate where there is probable cause to believe that the crime alleged encompasses the entire business operation and that evidence will be found in most or all business documents. *United States v. Bentley,* 825 F.2d 1104, 1110 (7th Cir.1987); *People v. Lewis* 710 P.2d 1110, 1114 (Colo.App.1985). In this case, the alleged crime is fuel tax fraud. We disagree with the trial court's conclusion that the alleged fraud encompassed only a small part of the defendants' business.

Section 39–27–102, 18B C.R.S. (1994), and section 39–27–202, 16B C.R.S. (1994), impose taxes on the sales of gas and special fuel, respectively, which are collected at various transactional points during transfer of fuel from the refinery to the consumer market. Thus, every fuel transaction potentially implicates the tax. Since MPI's business consisted of fuel transactions, we find that the fuel tax, and hence the alleged fraud, was widely implicated throughout MPI's business operation. This is not a case where the fraud alleged was limited only to a portion of the business. *See United States v. Roche,* 614 F.2d 6 (1st Cir.1980) (where fraud alleged pertained only to auto insurance, warrant authorizing seizure of all records of diversified insurance company was too broad); *In re Application of Lafayette Academy,* 610 F.2d 1 (1st Cir.1979) (where alleged fraud pertained only to student loan documents, warrant authorizing seizure of all business documents of the academy was too broad).

Further, the prosecution argues that many of the documents listed in the warrant, while not direct evidence of the tax discrepancies, may be linked to the crime because they relate to the defendants' willful and intentional failure to pay the taxes. We agree. When making its ruling, the trial court focused only on the materials the revenue agents would need to compute the unpaid taxes. It did not consider that the prosecution was required to prove not only the amount of unpaid taxes, but also the defendants' intent to defraud the government. To prove its case, the prosecution needed documents directly showing that the defendants

failed to pay the tax and also documents showing, for example, where the unpaid funds were transferred. Thus, while the warrants in this case were broad in nature, we find that their breadth was permissible.

### B.

■ In support of their argument that the warrants were too broad, defendants cite *United States v. Cardwell,* 680 F.2d 75 (9th Cir.1982), and *United States v. Spilotro,* 800 F.2d (9th Cir.1986). These two cases, however, can be distinguished from the present case. *Cardwell* is a corporate tax fraud case in which the Ninth Circuit held that an "all records" warrant was too broad. The two reasons for their holding, however, were that: (1) while the alleged fraud took place during only one tax year, the warrant did not restrict the officers to taking only documents for those dates; and (2) the government could have drafted a more particular warrant because it knew exactly which documents it needed since it had previously conducted an on-site audit as part of the investigation. *Cardwell,* 680 F.2d at 77–78.

Here, the warrants had a date restriction which related to the period of the alleged fraud. Furthermore, the government could not have been more particular because it had been unable to conduct an audit. Since the government's information consisted only of the results of a preliminary investigation of their own records, the revenue agents lacked the information necessary to tailor the scope of the warrants in question.

The defendants' citation to *Spilotro* also does little to bolster their argument. In that case, the warrant contained one clause that allowed the government to seize all property which was evidence of a violation of any one of thirteen different statutes and another clause which allowed them to seize anything which was evidence of any crime. *Spilotro,* 800 F.2d at 961. The executing agents in *Spilotro* were given unconstitutionally broad discretion to determine for themselves what was to be seized. In contrast, the warrants in this case "describe[d] in both specific and inclusive generic terms what [was] to be seized.... By directing the searching officers to seize *all* of these items, the magis-

trate, rather than the officer, determined what was to be seized." *United States v. Christine,* 687 F.2d 749, 753 (3d Cir.1982).

### C.

■ Defendants further complain that the warrant on its face did not even limit the search to documents which are connected to fuel tax fraud. We disagree. The courts are required to read warrants and the accompanying affidavits in a practical, common sense fashion. *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745–46, 13 L.Ed.2d 684 (1965); *United States v. Leary,* 846 F.2d 592, 600 (10th Cir.1988); *People v. Jackson,* 189 Colo. 316, 318, 543 P.2d 705, 707 (1975); *People v. Lamirato,* 180 Colo. 250, 256, 504 P.2d 661, 664 (1972). Furthermore, the particularity of an affidavit can cure an overbroad warrant. *Leary,* 846 F.2d at 603–04; *see also* 2 Wayne R. LaFave, *supra,* § 4.6(a) at 558. In this case, since the affidavit was incorporated into each warrant, a common sense reading of the two documents together clearly indicates that they authorize seizure of business documents for the assigned dates which were reasonably related to fuel tax fraud. Further, the affidavit was presented to a neutral and detached magistrate who determined that there was probable cause for the searches. *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948) (the protection of the Fourth Amendment lies in the requirement that a neutral and detached magistrate determine probable cause for a search). Lastly, since the affiant, Agent Leonard, executed the warrants, there is no question of service of the warrants or whether the executing agent understood what was authorized for seizure. *See* 2 Wayne R. Lafave, *supra* § 4.6(a) at 560 (courts have taken into account the knowledge of the executing officer when description in the warrant was facially sufficient but partially in error as to the things to be seized). The authority of the warrant must be read within the context of the affidavit, wherein the scope was defined and limited to evidence of fuel tax fraud. As so read, the warrants survive constitutional

challenge.[7]

In determining whether there is probable cause to issue a search warrant, the court must examine the totality of the circumstances. *People v. Lubben,* 739 P.2d 833, 834 (Colo.1987). Here, the government was unable to conduct an on-site audit, the fuel tax was implicated widely throughout the business, there was no evidence that the searches were exploratory, and the government showed good faith by obtaining a third warrant for the computer equipment and printouts. Hence, we conclude that the warrants were supported by probable cause and were not overbroad or defective.

### III.

Though the warrants were not unconstitutionally broad, neither were they exemplars of draftsmanship. But as Chief Judge Campbell remarked in his concurrence in *United States v. Abrams,* 615 F.2d 541, 548–49 (1st Cir.1980), business fraud investigation presents special problems for investigators attempting to draft warrants because the documents which evidence crime are mixed with irrelevant, "innocent" materials. Under the circumstances, these warrants were reasonably designed to secure the evidence for which there was probable cause.

We therefore reverse the trial court's suppression order and remand for proceedings consistent with this opinion.

SCOTT, J., concurs.

Justice SCOTT, concurring:

I join in Justice Kourlis's well-reasoned opinion and the judgment of the majority. I write separately to emphasize that the search, which took place here, was conducted under a warrant. Barring bad faith, misrepresentations, or illegal conduct on the part of the issuing magistrate or the police officer, the evidence obtained is "properly admissible under a limited constitutional 'good faith exception' to the exclusionary rule." *People v.*

*Deitchman,* 695 P.2d 1146, 1157 (Dubofsky, J., concurring).

While its reach remains uncertain, I find *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), worthy of note here. In *Leon,* the Supreme Court held that evidence seized pursuant to a good faith, reasonable reliance upon a warrant later found invalid may be admitted into evidence during the prosecution's case-in-chief in a criminal trial. The Court reasoned that the purpose of the exclusionary rule is to deter police misconduct, and that costs associated with application of the rule are justified only where the purpose of deterrence is served. *See id.* at 920–21, 104 S.Ct. at 3419. As the Court stated:

> It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Leon,* 468 U.S. at 921, 104 S.Ct. at 3419 (citations omitted) (footnote omitted); *see also Deitchman,* 695 P.2d at 1157–58.

The facts of this case involve a police officer acting pursuant to lawful warrants, which were "supported by probable cause and were not overbroad or defective." Nonetheless, as Justice Kourlis's opinion states, the government demonstrated good faith. Maj. op. at 12–13. It is obvious that Agent Leonard attempted to stay within the confines of each warrant, and upon discovering a potential deficiency, he appropriately obtained yet another warrant. Furthermore, the officer acted with probable cause, and despite the fact

---

7. If the search resulted in the seizure of things unrelated to fuel tax fraud, then such evidence is properly suppressed. This, however, has no bearing on the validity of the warrants. *Tucci,*

179 Colo. at 375, 500 P.2d at 816. In any case, none of the evidence actually seized is being used by the prosecution to prove any other crime than the alleged fuel tax fraud.

that a better crafted warrant would have provided greater particularity, the officer acted reasonably in conducting the search.

Given the officer's good faith, the purposes of the exclusionary rule would not be furthered by discouraging officers, in general, from carrying out their tasks pursuant to a warrant only to later have evidence excluded because of magisterial error. It would be unfortunate if court rulings discouraged police officers from seeking the authority of a warrant for the purposes of a search or seizure of persons, houses, papers, and effects.