24CA0784 Peo v Mason 12-24-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0784
Weld County District Court No. 16CR2268
Honorable Meghan Patrice Saleebey, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Daniel Mason,

Defendant-Appellant.

ORDER AFFIRMED

Division V
Opinion by JUDGE FREYRE
Pawar and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 24, 2025

Philip J. Weiser, Attorney General, Caitlin E. Grant, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Frank Law Office LLC, Adam Frank, Denver, Colorado, for Defendant-Appellant

¶ 1 Defendant, Daniel Mason, appeals the postconviction court's order denying his Crim. P. 35(c) motion for postconviction relief after an evidentiary hearing. We affirm.

## I. Background

¶ 2 In 2015, the United States Homeland Security Investigations Cyber Crimes Center's Child Exploitation Investigations Unit (CEIU) joined an ongoing child pornography investigation. This investigation involved multiple individuals across the United States who were members of an internet-based bulletin board dedicated to the advertisement, distribution, and production of child pornography. CEIU identified an IP address, associated with an internet subscriber located in Colorado (the Subject Property), that was used to download child pornography. Mason lived at the Subject Property with his parents and two siblings.

¶ 3 Based on this information, CEIU obtained and executed a search warrant for the Subject Property, seizing multiple computers and electronic storage devices, including a desktop computer belonging to Mason that was found in his bedroom. A forensic examination of Mason's computer located files in several places on the computer's hard drive containing sexually exploitative material.

1

¶ 4     In October 2016, Mason was charged with nine counts of sexual exploitation of a child.  Following a jury trial, Mason was convicted of one count.  The jury was unable to reach a verdict on the remaining counts.  The trial court sentenced Mason to seven years of probation.

¶ 5     Mason appealed his conviction.  Trial counsel represented Mason on appeal.[1]  A division of this court affirmed.  *See People v. Mason,* (Colo. App. No. 19CA2168, Sept. 9, 2021) (not published pursuant to C.A.R. 35(e)).

¶ 6     Mason then filed a Crim. P. 35(c) motion.  After a two-day evidentiary hearing, the postconviction court denied Mason's motion.

¶ 7     On appeal, Mason contends that prior counsel was ineffective because (1) he did not move to suppress evidence seized from Mason's computer under the Fourth Amendment's particularity requirement, and (2) he failed to appeal the trial court's incomplete *Batson* inquiry.  We disagree.

---

[1] Because trial and appellate counsel are the same, we refer to counsel as "prior counsel" throughout the opinion for clarity.

## II.    Ineffective Assistance of Counsel

¶ 8    "A criminal defendant is constitutionally entitled to effective assistance from his counsel." *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003). To succeed on an ineffective assistance claim, the defendant must establish that (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant, meaning that a reasonable probability exists that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Dunlap v. People*, 173 P.3d 1054, 1062-63 (Colo. 2007). In considering the reasonableness of counsel's performance, a court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Additionally, counsel enjoys a "strong presumption" that his conduct falls within the wide range of reasonable professional assistance. *Id.* A postconviction court may reject an ineffective assistance claim if a

defendant fails to demonstrate either deficient performance or prejudice. *People v. Aguilar*, 2012 COA 181, ¶ 9.

¶ 9　　We review the denial of a Crim. P. 35(c) motion after a hearing as a mixed question of fact and law, *People v. Corson*, 2016 CO 33, ¶ 25, deferring to the postconviction court's factual findings but reviewing de novo the court's ultimate conclusions regarding performance and prejudice, *People v. Sharp*, 2019 COA 133, ¶ 12. The postconviction court determines the weight and credibility to be given to the testimony of witnesses in a Crim. P. 35(c) hearing. *People v. Hardin*, 2016 COA 175, ¶ 39. Accordingly, "[w]here the evidence in the record supports the findings and holding of the postconviction court that presided over an evidentiary hearing, the judgment will not be disturbed on review." *People v. Wardell*, 2020 COA 47, ¶ 27.

### A.　Particularity of Warrant

¶ 10　Mason contends that prior counsel provided ineffective assistance by not moving to suppress evidence found on Mason's computer because the warrant was not particularized. We are not persuaded.

### 1. Additional Background Information

¶ 11    As relevant here, the search warrant authorized the seizure and search of "computer(s), digital storage media, or digital storage devices," located within the Subject Property, including information about the IP address "that constitute[d] evidence of the commission of, contraband, the fruits of the crime, or instrumentalities of violations of Title 18, United States Code, Sections 2252(a)(1), (2), and (4) and 2252A(a)(1), (2), (3), and (5)."

¶ 12    The affidavit contained the following information:

- The affiant had been a special agent with the United States Immigration and Customs Enforcement's Homeland Security Investigations branch since 2007. As part of his duties, the affiant investigated criminal violations relating to child exploitation and child pornography. The affiant previously conducted and participated in numerous child exploitation and child pornography investigations, search warrants, interviews, and forensic examinations.

- Digital software or hardware exists that allows people to share digital access over wired or wireless networks

allowing multiple people to browse the Internet from the same IP address.

- The majority of individuals who collect child pornography rarely dispose of their sexually explicit materials and may go to great lengths to conceal and protect their collection.

- Mason resided at the Subject Property and had a driver's license registered to the Subject Property.

¶ 13    Before trial, Mason filed a motion to suppress all evidence seized when CEIU searched the Subject Property. Mason asserted that the affidavit in support of the warrant "lacked the requisite probable cause to justify the intrusion."

¶ 14    At the motions hearing, prior counsel rested on his motion. The trial court found:

> In regarding the search warrant, I would certainly note that much of the search warrant really does go to the officer's training and what different things mean in the context of child pornography, how that sharing happens, how people who view that may kind of try to hide that fact, and again, in terms of kind of the layers that ultimately the officer lays out in the warrant in terms of what you have to go through to ultimately try to get to the information as to what specific IP address it is, where that computer may be physically located.

I do find based upon the four corners of the affidavit, however, that there was probable cause for the Court to issue the search warrant. *I do find that it was particular as to the specific IP address* in that it was supported by the information as well, by the specific information that was able to be obtained prior to the search warrant for the house, as well as the general information that the agent had to again pull everything together to believe that ultimately that specific physical address was the home of the IP address that is ultimately listed.

So I am going to deny the motion to suppress the search.

(Emphasis added.)

¶ 15    In his postconviction motion, Mason alleged that prior counsel was ineffective for failing to challenge the breadth of the search warrant. Specifically, relying on *People v. Herrera*, 2015 CO 60, Mason argued that the warrant violated the particularity requirement because the application lacked "even a scintilla" of information "particular to Mr. Mason, anyone in his family, or anyone who had ever accessed an electronic device in the Mason household suggesting that Mr. Mason or anyone else might have taken any action to conceal the nature of any files on any electronic device on the Mason property."

7

¶ 16    At the evidentiary hearing, Eric Klein, an expert on the standards for effective assistance of counsel, testified regarding counsel's performance.  Klein testified that prior counsel was ineffective because the warrant was not particularized to "search in the electronic device for places that the file may be located" and because there was no nexus establishing probable cause to believe the evidence would be found on Mason's computer.

¶ 17    The postconviction court found that (1) prior counsel filed a motion to suppress, and (2) the motion asserted that the warrant lacked probable cause under the Fourth Amendment to "justify the intrusion."  While the motion did not cite or rely on *People v. Herrera*, prior counsel "did raise the issue of breadth and asserted that the search violated his client's constitutional rights."  Moreover, the postconviction court found:

> The issue for the Court is not whether [prior counsel] should have performed in and approached the case in the same manner as Defense Expert Mr. Klein who has a significant breadth of experience and was properly qualified as an expert.  Nor is the issue, whether, because a case such as *Herrera*, can be found during a quick search of Westlaw that the failure to cite such a case amounts to ineffective assistance of Counsel.

. . . .

> The four corners of the Affidavit in this case,
> unlike in *Herrera* do establish the mechanisms
> by which computers and computer networks
> are used to facilitate crimes such as the sexual
> exploitation of children, including that the
> nature of the crime itself involves the folders,
> use of third-party sites, search engines and
> bulletin boards that often involve concealment.
> The fact remains that, while not in the manner
> that an expert such as Mr. Klein would
> recommend, the search warrant was
> challenged by [prior counsel] and the Court
> conducted an independent review of the same.

### 2.    Applicable Law

¶ 18    The Fourth Amendment protects individuals from an unreasonable search or seizure of personal property by the government.  U.S. Const. amend. IV.  A warrant may be issued only if there is probable cause for a search or seizure.  *Id.*

¶ 19    A "general warrant[]" is one that permits "general, exploratory rummaging in a person's belongings."  *People v. Coke*, 2020 CO 28, ¶ 34 (quoting *Andresen v. Maryland*, 427 U.S. 463, 480 (1976)). General warrants are prohibited under the Fourth Amendment.  *Id.* Thus, a warrant must be supported by probable cause that a crime has been committed, and the scope of the warrant must be "sufficiently particular that it enables the executing officer to

9

reasonably ascertain and identify the things authorized to be seized." *People v. Rodriguez-Ortiz*, 2025 COA 61, ¶ 22 (quoting *People v. Roccaforte*, 919 P.2d 799, 803 (Colo. 1996)). A warrant lacks particularity if it does not describe with specificity the place to be searched, and the persons or things to be seized. *United States v. Suggs*, 998 F.3d 1125, 1132 (10th Cir. 2021).

¶ 20 When evaluating whether a warrant is sufficiently particular, the reviewing court must look at the "totality of the circumstances," *Rodriguez-Ortiz*, ¶ 21, reviewing the warrant and any "accompanying affidavits" in a "practical, common sense fashion" to determine if probable cause exists, *id.* at ¶ 23 (quoting *Roccaforte*, 919 P.2d at 804).

### 3. Analysis

¶ 21 Mason contends that prior counsel was deficient for failing to challenge the evidence seized from Mason's computer in four ways: (1) the warrant was general; (2) the warrant and accompanying affidavit authorized a complete search of all shared property; (3) the warrant and affidavit authorized a complete search of Mason's computer in violation of *Herrera*; and (4) the warrant and affidavit

10

did not describe a nexus between the illegal activity law enforcement discovered and Mason's computer.

¶ 22     However, as previously described, prior counsel did file a motion to suppress the seized evidence, arguing that the affidavit "lacked the requisite probable cause to justify the intrusion," and the trial court made a finding of particularity.  Mason does not provide, and we are not aware of, any authority requiring prior counsel to file a *more specific* motion to suppress.  Moreover, as the trial court noted, the issue was not whether prior counsel would have presented the same legal arguments as Klein.  "There are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way."  *Strickland*, 466 U.S. at 689.  Thus, because prior counsel raised the challenge by filing a motion to suppress the evidence seized, and the trial court made specific findings on particularity, we discern no error in the postconviction court's finding that prior counsel provided effective assistance.

¶ 23     Additionally, Mason failed to establish prejudice.  Mason's reliance on *Herrera* and *Coke* is misplaced.

¶ 24 In *Herrera*, the defendant was suspected of having sexual interactions with an underage girl, F.W., including via text messages. *Herrera*, ¶ 7. After receiving the defendant's phone number from F.W.'s mother, a detective began texting the defendant, posing as a fourteen-year-old girl. *Id.* at ¶ 8. The texts led to the defendant's arrest several weeks later. *Id.* The detective applied for, and was granted, a search warrant for the defendant's phone. *Id.* at ¶ 9. The warrant permitted a search of the phone for "(1) texts sent between [the defendant] and [the detective], (2) photographs sent between [the defendant] and [the detective] that were attached to the text messages, and (3) indicia of ownership to show the phone belonged to [the defendant]." *Id.*

¶ 25 A second detective, who wasn't the affiant, searched the phone and clicked on a text message folder that referenced F.W. *Id.* at ¶ 13. Based on the contents of that folder, the defendant was charged with several sexual crimes against a child. *Id.* at ¶14. However, because there was no link between the folder and the phone number of the undercover detective, the trial court suppressed the evidence from that folder. *Id.* at ¶ 16.

¶ 26    The supreme court upheld the trial court's suppression ruling, concluding that the People's rationale "transform[ed] the warrant into a general warrant that fail[ed] to comply with the Fourth Amendment's particularity requirement."  *Id.* at ¶ 18.  The supreme court determined that the warrant had no limiting principle.  *Id.* at ¶ 19 ("[T]he People's rationale would permit officers to 'rummage through' the entirety of an individual's private information contained in his phone, without limitation.").

¶ 27    Mason likens his case to *Herrera*, arguing that the affidavit contained no evidence he mislabeled files or attempted to conceal illegal material on his computer.  However, the supreme court noted that, in other contexts, courts have recognized that defendants can easily conceal contraband by mislabeling files.  *Id.* at ¶ 33.  In such cases, courts have upheld broad search warrants, reasoning that warrants cannot be limited to certain computer file names when "illegal activity may . . . well be coded or otherwise disguised." *United States v. Burgess*, 576 F.3d 1078, 1093 (10th Cir. 2009); *see also United States v. Richards*, 659 F.3d 527, 536, 541–42 (6th Cir. 2011) (upholding a search of all the files on a computer when the investigator specifically testified that, in his experience, suspects

frequently mislabeled files).  In this case, the affiant established that searching computers for evidence of child pornography may require a range of data analysis techniques because individuals may attempt to conceal evidence or activity by hiding files or giving them deceptive names.

¶ 28    Moreover, unlike the warrant in *Coke* — which allowed police to search all information without limitation — the warrant here limited the search to data related to the criminal activity described in the affidavit.  *Cf. Coke*, ¶ 38.

¶ 29    Accordingly, we perceive no error in the postconviction court's decision to deny Mason's claim.

### B.    Incomplete *Batson* Inquiry

¶ 30    Mason next contends that prior counsel was ineffective because he failed to appeal the trial court's incomplete *Batson v. Kentucky*, 476 U.S. 79 (1986), inquiry.  We disagree.

### 1.    Additional Background Information

¶ 31    After the prosecution used its fourth peremptory challenge the following colloquy ensued:

> DEFENSE COUNSEL: Judge, I'm going to challenge that peremptory on *Batson*, [Mr. R.] There's three Hispanics.  I think [Mr. H.] was

Hispanic or Latino; the Prosecution kicked [Mr. H.] off.  The only other Hispanic is [Mr. C.], so I am asking the Court to reseat [Mr. R.] and not allow that peremptory.

TRIAL COURT: First of all, I don't know that [Mr. H.] . . . is in fact Hispanic, but I will take [that] at face value.

. . . .

PROSECUTOR: So in regards to [Mr. R.], the reason that I excused him is first he expressed a criminal history, which is concerning to the People.  Also, when he was in chambers he was not giving very articulate answers.  He was kind of giving one-word answers, which in my mind indicated a level of intelligence that isn't going to be able to appreciate or grasp the technical evidence that this jury is going to hear.

TRIAL COURT: At this time I do find the record made by the People, one, to be supported by the evidence but also to be sufficient, and so I will deny the request to reseat [Mr. R.]

¶ 32    After trial, prior counsel filed a motion for a new trial under

Crim. P. 33.  Prior counsel argued:

Under [*Batson*,] the prosecution impermissibly struck a Latino male, [Mr. R.,] after striking another Latino male who was still in high school, [Mr. H.]  Counsel for Mr. Mason objected and the prosecution claimed some intellectual deficit in not being able to answer questions as a reason for striking [Mr. R.] However, [Mr. R.] met with the Court and both counsel in chambers during voir dire, and [Mr.

15

R.] never exhibited any trouble answering questions and certainly did not express any difficulty. During the panel voir dire with the other jurors, [Mr. R.] again expressed no difficulty understand[ing] the proceedings, the law or the Court's instructions. Further, neither the Court nor the prosecution inquired into whether [Mr. R.] in fact had any intellectual difficulty at any point during the proceedings — in chambers or in the panel voir dire. Thus, the impermissible strike violated Mr. Mason's right to a fair trial and due process. Furthermore, the impermissible strike violated [Mr. R.]'s right as a citizen to sit on a jury panel.

¶ 33    The trial court denied the motion, and Mason appealed. On appeal, the division determined that the record supported the trial court's decision to deny Mason's *Batson* challenge. The court noted that Mason did not assert on appeal that he should have been given an opportunity to rebut the prosecution's reasons but argued, without more, that the court "did not allow" him to provide a rebuttal. The division concluded this argument was undeveloped and that the record supported the trial court's ruling denying the challenge.

¶ 34    In his postconviction motion, Mason argued that prior counsel was ineffective for failing to object when the trial court did not conduct the required third step under *Batson* and for failing to

16

make a record of information refuting the prosecutor's purported reasons for using a peremptory challenge on Mr. R. After prior counsel testified at the postconviction hearing, the postconviction court found:

> [T]o the extent that this Court wishes to consider the claim and make the record clear, as to the narrow issue, of whether the purported failure of [prior counsel] to more fully argue that the Court should have allowed him to rebut the prosecution's neutral explanation pursuant to cases such as *People v. Beauvais*, 2017 CO 34, was ineffective, the Court cannot find that this meets the first prong of *Strickland*. Certainly, raising the *Batson* issue on appeal and in a motion for a new trial is certainly within the "wide range" of reasonable performance by [prior counsel]. The court is highly deferential when reviewing trial counsel's performance and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. And, even if the Court found the first prong, the Court cannot find that there is a reasonable probability that raising this argument would have changed the outcome of the opinion of the Court of Appeals and/or impacted the motion for a new trial.

¶ 35 On appeal, Mason contends that "[a]ll prior counsel had to do to win a remand was to argue that the trial court conducted an incomplete *Batson* inquiry." He argues that counsel's opening brief

17

was only half the permitted length, so this issue could have been raised without omitting others, and he argues there was no justification for counsel's omission. He also argues that prior counsel's deficient performance deprived him of a reasonable probability to win a new trial on remand.

### 2. Standard of Review and Applicable Law

¶ 36 The same two-pronged *Strickland* test applies to claims of ineffective assistance of appellate counsel. *People v. Long*, 126 P.3d 284, 286 (Colo. App. 2005).

¶ 37 To establish the performance prong, "the defendant must show that counsel failed to present the case effectively" — for example, by "ignor[ing] issues that are clearly stronger than those presented." *Id.* But "[a]ppellate counsel is not required to raise on appeal every nonfrivolous issue a defendant desires to raise. *People v. Trujillo*, 169 P.3d 235, 238 (Colo. App. 2007). "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome' even in the context of a direct appeal." *Id.* (alteration in original) (quoting *Ellis v. Hargett*, 302 F.3d 1182, 1189 (10th Cir. 2002)).

¶ 38    To establish the prejudice prong based on a failure to raise

specific issues on appeal, the defendant must show that, but for

counsel's errors, the appeal would have prevailed.  *See Long*, 126

P.3d at 286; *Trujillo*, 169 P.3d at 238-29.

¶ 39    During the jury selection process, a party may not

discriminate based on a prospective juror's race or ethnicity.  *See*

*Batson*, 476 U.S. at 85-87.  If a party raises a *Batson* challenge

alleging racial discrimination, the trial court engages in a three-step

analysis.  *People v. Toro-Ospina*, 2023 COA 45, ¶ 16.  First, the

court must determine if the objecting party made a prima facie

showing that the peremptory strike was based on race; second, if

the first step is met, the striking party must offer a race-neutral

reason for the removal of the prospective juror; and third, the court

must determine whether the objecting party has shown by a

preponderance of evidence that the strike was purposefully

discriminatory on the basis of race.  *Id.*; *see People v. Ojeda*, 2022

CO 7, ¶¶ 21-27.

¶ 40    "[T]he proper remedy for an inadequate inquiry into a *Batson*

challenge . . . is to remand the case to the trial court with directions

to . . . make the required factual findings." *People v. Rodriguez*, 2015 CO 55, ¶ 21.

### 3. Analysis

¶ 41 We agree with the postconviction court that prior counsel's decision to raise the *Batson* issue on direct appeal and in the motion to dismiss falls within the "wide range" of reasonable performance. Again, Mason does not provide any authority that requires prior counsel to have made the specific arguments in the direct appeal that he now advances. In contrast, counsel is generally considered the "captain of the ship" and may decide which issues to pursue upon appeal. *People v. Smith*, 2024 CO 3, ¶ 28 (citation omitted); *see also People v. Rodriguez*, 914 P.2d 230, 303 (Colo. 1996) (rejecting claim that appellate counsel rendered ineffective assistance by failing to raise all available issues on appeal).

¶ 42 We are similarly unpersuaded that Mason established prejudice. Mason contends that, had the case been remanded, and if the trial court had been unable to make the required factual findings due to the passage of time or other factors, he would have been granted a new trial. However, we conclude that such

20

speculation does not establish prejudice, and Mason provides no additional information concerning what prior counsel would have argued in rebuttal to substantiate a claim of purposeful discrimination on remand.[2]

¶ 43     To the extent Mason argues that prior counsel was ineffective due to a lack of extensive appellate experience, we disagree. The record shows that prior counsel sought guidance from other attorneys in filing the appeal. As the postconviction court found, "[b]ecause an appeal was not successful and/or because in hindsight, another attorney might have made a different argument, under the *Strickland* test, is not ineffective." Moreover, the postconviction court found that prior counsel, through his testimony, "demonstrated that he made strategic considerations during the appellate process." *See Hardin*, ¶ 39 (the postconviction court determines the weight and credibility to be given to the testimony of witnesses).

---

[2] In his direct appeal, Mason provided the responses he would have made at step three, and the division concluded that they did not warrant reversal of the trial court's ruling. *People v. Mason*, slip op. at ¶¶ 12-16 (Colo. App. No. 19CA2168, Sept. 9, 2021) (not published pursuant to C.A.R. 35(e)).

¶ 44 Again, we perceive no error in the postconviction court's denial of Mason's motion.

### III. Disposition

¶ 45 The order is affirmed.

JUDGE PAWAR and JUDGE YUN concur.